APPELBY ET AL. *v.* STATE OF INDIANA.

[No. 27,679. Filed May 11, 1943. Rehearing denied June 24, 1943.]

*Andrew Jacobs,* of Indianapolis, and *Ben Meyers,* of Chicago, Illinois, for appellants.

*James A. Emmert,* Attorney General, *Frank Hamilton,* First Assistant Attorney General, *Frank E. Coughlin,* Deputy Attorney General, and *David W. Dennis,* of Richmond, for appellee.

SHAKE, J.—The appellants were convicted on an indictment charging them and twenty-three others with resisting and obstructing peace officers by use of dangerous and deadly weapons. Errors are assigned upon the overruling of appellants' motion to quash the indictment, motion in arrest of judgment, and motion for a new trial.

Under the first two assignments it is contended that the indictment is insufficient to charge a public offense on account of its failure to allege that the peace officers were known by the appellants to be such.

The statute upon which the prosecution was based is as follows:

"Whoever shall forcibly assault, resist, oppose, obstruct, prevent, impede or interfere with any peace or police officer of this state, or any person assisting him, while such officer is arresting or

attempting to arrest any person, or while such officer is engaged in the execution of any of the duties of such peace or police officer, shall be deemed guilty of a misdemeanor, and, upon conviction thereof, shall be fined not to exceed one hundred dollars [$100] or imprisoned in the county jail or Indiana State Farm not more than six [6] months, or both; and whoever shall draw, use or attempt to use a firearm, deadly or dangerous weapon, or commit a bodily injury upon any peace or police officer of this state, or upon any person assisting such peace or police officer, while assaulting, resisting, opposing, obstructing, preventing, impeding or interfering with any peace or police officer, when such officer is arresting or attempting to arrest any person, or while such officer is engaged in the execution of any of the duties of such officer, shall be deemed guilty of a felony, and, upon conviction thereof, shall be imprisoned in the state prison for a period of one [1] year." Acts 1929, ch. 101, § 1, p. 310, § 10-1005, Burns' 1942 Replacement, § 2525, Baldwin's 1934.

In charging a crime it is not necessary to allege guilty knowledge on the part of the defendant, unless such knowledge is an ingredient of the definition of the offense. *State* v. *Freeman* (1842), 6 Blackf. 248, 27 Am. Jur., Indictments and Informations, § 69, p. 632, 11 L. R. A. 191. Since the above statute does not embrace the element of knowledge it was not necessary to allege it. The indictment followed the language of the statute and that is sufficient.

The appellants' motion for a new trial occupies forty-five (45) of the six hundred sixty-eight (668) pages of their printed brief. Sixty-six (66) separate and distinct legal propositions are presented for our determination. We cannot bring ourselves to believe that the framers of our State Constitution had any such situation in mind when they enjoined upon us the obligation to "give a statement in writing

of each question arising in the record" (Article 7, Section 5), or when they imposed upon the General Assembly the duty to provide for "the speedy publication of the decisions" of this court (Article 7, Section 6). At the risk of being charged with failing to meet our responsibilities, we feel obliged to limit our consideration of this case to what appear to be the principal contentions. We have pointed out in the past that one prejudicial error clearly presented is enough to accomplish a reversal by this court. *Weer* v. *State* (1941), 219 Ind. 217, 36 N. E. (2d) 787, 37 N. E. (2d) 537.

Complaint is made of the refusal of the trial court to permit the jury to see an exhibition of a newsreel movie film depicting the scene at the commission of the alleged crime. When objection was made to the offer of this exhibit the court conducted a preliminary inquiry in chambers and out of the presence of the jury. The record discloses that the film was excluded because its sequence and chronology had been destroyed by cutting and rearrangement. Still-life photographic prints made from the movie film were admitted, however.

The law keeps pace with scientific advancement, and movie films have been recognized as possessing evidentiary value under proper circumstances. 129 A. L. R. 361. A motion picture film is but a series of still photographs (32 C. J. S., Evidence, § 709) capable of being displayed so as to simulate action. The fact that the continuity of the film in controversy had been disturbed was enough to warrant its exclusion (15 Ind. Law Journal 408, 434), but this did not affect the probative value of the individual prints made therefrom, which were admitted. We think the court's action was proper.

During the course of the trial several of the appel-

lants were identified by witnesses who did not know the names of the appellants. When these appellants were pointed out by the witnesses the court required them to stand where they could be seen by the jury. In one instance, after the prosecuting attorney had requested that a particular appellant, who had been so pointed out, might be required to stand, his counsel inquired, "Does the court require this defendant to state his name?", to which the court replied, "That is correct." Counsel for said appellant thereupon reserved an exception without interposing any objection or calling the court's attention to the fact that an infringement of any constitutional guaranty was claimed. Under the circumstances, no question was saved with respect to this appellant being required to give testimony against himself. The provision of the Constitution upon which he now relies affords no protection that may not be waived. *Spitler* v. *State of Indiana* (1943), *ante*, p. 107, 46 N. E. (2d) 591.

There was no impropriety on the part of the trial court in requiring the appellants to stand when they were pointed out by witnesses who did not know them by their names. In *People* v. *Gardner* (1894), 144 N. Y. 119, 38 N. E. 1003, it was observed:

"It is the right of the prisoner to be in the presence and view of the jury, and it is the right of the prosecution to have him in view of the presiding judge and jury and the counsel engaged in the trial. And whether at any particular time he should stand up or sit down in the presence of the jury must be a matter resting in the discretion of the trial judge, and in no sense can it be said that by the exercise of such discretion his constitutional right is involved."

See, also, *People* v. *Curran* (1918), 286 Ill. 302, 121 N. E. 637; *Panzich* v. *U. S.* (1933), (CCA), 65 Fed. (2d)

550, and *Jamerson* v. *U. S.* (1933), (CCA), 66 F. (2d) 569, *certiorari* denied 290 U. S. 706, 78 L. Ed. 606, 54 S. Ct. 373.

The appellants moved to set aside the submission of the cause on account of the alleged misconduct of the prosecuting attorney. It was charged that while the prosecutor was engaged in cross-examining a witness on the subject of the identity of the appellants, he held in his hands a collection of their photographs which bore what purported to be prison numbers, and manipulated these pictures in such a manner as to make them visible to the jury. This charge was denied by the prosecutor and his assistant, after which the appellants asked and obtained leave to substantiate their charge by the testimony of the court reporter. The reporter did not support the charge and in overruling the motion the judge said: "I was in some doubt until this testimony as to what had taken place, but you have convinced me by your examination of this witness that these pictures were not facing the jury." This court will not disturb a finding of fact based upon conflicting evidence. On the state of the record we cannot say that it was error to refuse to set aside the submission.

On the occasion of the oral argument counsel for the appellants strongly urged that there was no competent evidence of the guilt of the appellant Theodore Lorek. With commendable candor the Attorney General has since conceded that this is true, and he has filed a confession of error as to said appellant. We have reviewed the evidence and find that it is sufficient to sustain the conviction of the other appellants. There is no merit in any of the other assigned errors.

The judgment is reversed as to the appellant Theodore Lorek on the State's confession of error, and the

Randolph Circuit Court is ordered to grant him a new trial. As to all the other appellants the judgment is affirmed.

NOTE.—Reported in 48 N. E. (2d) 646.

## ON PETITION FOR A REHEARING.

SHAKE, J.—The appellants have filed a petition for a rehearing in which they assert that we have failed in our constitutional duty to pass upon all the questions presented and that we have misstated the record.

The language of the original opinion inaccurately stated that "sixty-six (66) separate and distinct legal propositions are presented for our determination." The fact is that the appellants' brief was insufficient under the rules to present any question for consideration.

Rules of procedure are necessary to the functioning of this court and the due administration of justice. The requirements as to the contents of briefs are as clear and unambiguous as it has been possible to make them. Most attorneys experience no difficulty in complying with these rules, but, from time to time, some members of the Bar, through lack of understanding or negligence, do not conform to the requirements and thus fail to present any question for consideration. It is only in rare instances that the rules are so strictly enforced that the substantial rights of the parties are not considered. This is particularly true in criminal cases where life and liberty are at stake. The court is always reluctant to expose counsel to the embarrassment of having failed to present anything for consideration, and it is usually said, sometimes inaccurately, that there has been a good-faith effort to comply with the rules or that the principal contentions have been considered. Such was the situation in the case at bar. Since counsel for the appellants has seen fit to shift the responsibility

for his predicament to the court, we have concluded to set out verbatim the propositions which he sought to present in his original brief, though to do so will extend this opinion beyond what ought to have been necessary.

"PROPOSITION I. Assignments of Errors 1, 2, 3 and New Trial Ground 42. The court erred in overruling (B. 58) appellants' motion to quash (B. 10) the Indictment (B. 7-9), and in overruling (B. 57) appellants' motion to withdraw their pleas of not guilty (B. 54-57) and in overruling (B. 138) their motion in arrest of judgment (B. 138)."

"PROPOSITION II. New Trial Grounds 1, 3, 79, 80, 82; 88, 89; 91, 92, 93; and 96. The verdict of the jury is not sustained by sufficient evidence, and the court erred in overruling appellants' motion for a directed verdict predicated upon the insufficiency of the evidence, (B. 71) and by instructing the jury incorrectly regarding police officer's and appellants' rights and duties by giving its instructions numbered 17 (B. 103) and 19 (B. 110) and in refusing appellants' requested instructions numbered 20 (B. 126), 49, 50 (B. 131), 55, 56, 57 (B. 133) and 60 (B. 135)."

"PROPOSITION III. New Trial Ground 4. The Court erred in excluding accurate motion picture films (Exhibits A-8 and A-8-1) of the action in controversy."

"PROPOSITION IV. New Trial Grounds 5, 6 and 7. The court erred in forcing certain defendants and Appellant Dublinski to testify against themselves. (B. 362-364.)"

"PROPOSITION V. New Trial Grounds 8, 9, 43A and 45C. The court erred in refusing to set aside the submission because of the prejudicial conduct of appellee's attorney in displaying to jurors apparent convict photographs of some of appellants, (B. 60-71) and in making inflammatory statements to the jury. (B. 143; 324; R. 772.)"

"PROPOSITION VI. New Trial Grounds 19, 20, 21, 22, 23, 24, 25, 26, 27, 28. The court erred in admitting in evidence over appellants' objections testimony of Delmar Smith (B. 415-416), John R. Britton (B. 285), Ellis Duckett (B. 380) and

Robert Addison (B. 287, 289) Gracen H. Murley (B. 314), and Fred S. Fossler (B. 432), which testimony so admitted related mostly to the conduct of unnamed persons, inferentially associated with appellants but at a time 40 days prior to the incidents upon which the indictment was predicated and in excluding cross examination of appellee's witness, Richard Wambo (B. 360), upon what he did within 40 minutes after he went to the railroad tracks where Officer Johnson knocked Appellant Klepser down as Klepser fled from him and in excluding cross examination of appellee's witness, Fred S. Fossler (B. 434) concerning what the witness did and witnessed within 40 minutes after the occurrences of the events upon which the indictment was predicated and in excluding the cross examination of appellee's witness, Richard Wambo, upon the question of the cause of Defendant Barbara Kohr's arrest. (B. 359.)"

"PROPOSITION VII. New Trial Ground 29. The court erred in permitting appellee's witness, Daniel Johnson to testify over appellant's objection to his opinion that Appellant John Hull struck the witness. (B. 361-362.)"

"PROPOSITION VIII. New Trial Ground 33. The court erred in excluding cross examination of appellee's witness, Ernest Sparks, upon other remarks by Appellant Kerr in a speech delivered March 23, 1941, said witness having testified regarding one remark on direct examination. (B. 303-304.)"

"PROPOSITION IX. New Trial Ground 36, 37, 38. The court erred in excluding the testimony of Chester Gower, (B. 506-507) and Robert Ramsey, (B. 501-502) and rejecting appellants' offers to prove regarding instructions which Appellant Kerr and other officials of the union gave the membership to guide them in the conduct of the strike, after appellee had been permitted to introduce such evidence by its witnesses, Sparks (B. 302), Smith (B. 413), Markey (B. 437), Emslee (B. 342), Addison (B. 290) and Jack Shores (B. 377) and in deprecating the testimony of appellants' witness, Defendant Chester Gower, regarding such instruc-

tions by saying it 'doubted the relevancy because the whole thing is so confused.' (B. 507-508.)"

"PROPOSITION X. New Trial Ground 67. The court erred in giving of its own motion its Instruction No. 4 (B. 78-84) whereby the court asserted categorically the allegations of the indictment and the contentions of the State, including those concerning which there was no evidence whatever."

"PROPOSITION XI. New Trial Grounds 98 to 110. The court erred in failing and refusing to properly instruct the jury upon the law relating to aiders and abettors in that the court gave incorrect instructions of its own motion numbered 18 (B. 107), 20 (B. 111) and 21 (B. 113), and over-ruled appellants' specific objections and exceptions thereto, and refused to give proper instructions tendered by appellants numbered 32, 33 (B. 128), 34, 35, 36, 39 (B. 129), 45 (B. 130), 46, 47 (B. 131) and 50 (B. 132)."

"PROPOSITION XII. New Trial Grounds 48 to 66. The court erred in failing and refusing to properly instruct the jury upon the law relating to reasonable doubt in that the court gave incorrect instructions of its own motion numbered 3 (B. 76), 22 (B. 115), 24 (B. 118), and refused to give proper instructions tendered by the appellants numbered from 1 to 14 and 18, 19 (B. 121-125)."

Rule 2-17f, of this court, 1940 Revision, provides:

"The briefs shall contain under the heading, 'Propositions and Authorities,' *a copy of each assigned error relied on,* designated by number as in the original assignment of error, and in case the error assigned is the overruling of the motion for a new trial, then the causes relied upon shall be numbered as in the motion. *Each assignment shall be supported by separately numbered propositions,* concisely stating the basis of the objection to the ruling complained of. . . . Errors assigned and not treated as herein directed shall be deemed to be waived." (Our Italics.)

It is quite apparent that the appellants' brief did not conform to the above rule. The propositions relied

upon were not stated as they appeared in the motion for a new trial, nor were they separately numbered, as the rule commands. A consideration of the sixty-six (66) alleged errors embraced in the twelve (12) propositions stated would have imposed upon us the burden of searching the record for grounds of reversal. This may not be asked, and we would have been amply justified in affirming the judgment without reference to the merits. A similar situation was recently before our Appellate Court in *Baltimore & Ohio R. Co.* v. *Pertics* (1943), 112 Ind. App. 674, 46 N. E. (2d) 251, and we quote the concluding paragraph of the opinion in that case:

> "By way of general observation it may be stated that appellant's brief assigns error in thirty-two particulars but treats of only thirteen under the heading 'Propositions and Authorities' and such treatment is without reference to and in complete disregard for corresponding numbers in the original assignment of error. With the appellant, this court is equally bound by its rules and, as a condition precedent to the consideration of an appeal on its merits, it must appear that a good-faith effort has been made to comply therewith and a substantial compliance accomplished. With all the charity we are allowed to entertain towards appellant's brief, we are bound to hold that it presents no questions for review."

The appellants do not now assert that we reached the wrong conclusions as to the sufficiency of the indictment. We shall, therefore, reconsider the question of the admissibility of the movie film, the action of the trial court in requiring one appellant to stand and state his name to the jury, and the alleged misconduct of the prosecuting attorney.

When the film (Defendants' Exhibit A-8), was offered and objected to the court took the matter under advise-

ment. Subsequently, in announcing his ruling, the judge stated that the film had been projected for his inspection in chambers and in the presence of counsel; that it was apparent that the scenes depicted were not in chronological order but that they had been put together without regard to time sequence; that to correct this situation would require comparison with the negative from which the film was made and that the negative had not been produced; and that to admit the exhibit would tend to confuse, rather than enlighten the jury. The court further indicated that separate photographs made from the same negative as the movie film would be admitted. The appellants' brief on rehearing concedes that the sequence of the scenes in Exhibit A-8 were changed in the laboratory where the film was made. We reaffirm our conclusion that there was no error in excluding this exhibit.

After Exhibit A-8 had been excluded, the appellants offered A-8-1 which their counsel described as, "that portion of the film (Exhibit A-8) from the words 'Richmond, Indiana,' to, but not including the first scene of the State Police." The same objection was made to this offer as had been sustained with respect to the other exhibit, whereupon counsel for the appellants proposed that the prosecuting attorney edit the film and delete the objectionable matter. The prosecuting attorney refused to assume this responsibility and the court thereupon sustained the objection. The appellants brand this as an "arbitrary and capricious repression of the truth." We do not so consider it. Counsel objecting to the admission of incompetent evidence may not be required to assume the burden of making it competent. There is no question here of an accused being denied "the right to prove the truth with movies."

The appellants concede that there was no impropriety in requiring one of their number to stand up so he could be seen by the jury. Emphasis is now shifted to the fact that when counsel for appellants inquired, "Does the Court require this Defendant to state his name?", the court replied, "That is correct." The lack of a timely objection is sought to be excused by the claim that proper objections had previously been made when "certain defendants" had been directed to give like information. To ascertain who these "certain defendants" were and the nature of the objections that were offered in their behalf would require us to again make a search of the record. See Proposition IV, *supra*. In this connection, it might be urged with much force that counsel for appellants invited the incident of which he now complains. The inquiry as to whether the appellant should state his name came from him, rather than the prosecution or the court. We see no reason for receding from our previous conclusion that this proposition presents no reversible error.

A misstatement of the record is also asserted with respect to our previous discussion of the alleged misconduct of the prosecuting attorney. We said that, "This charge was denied by the prosecutor and his assistant, after which the appellants asked and obtained leave to substantiate their charge by the testimony of the court reporter. The reporter did not support the charge . . . ." The motion to set aside the submission alleged that, "The Prosecutor did, while he was cross-examining defendant Roy Gromer regarding the identity of various defendants, manipulate in his hands a group of about thirty (30) photographs showing a number of the defendants herein wearing what appeared to be convict or prison numbers; that such photographs

. . . were manipulated by the Prosecutor in such a way as to expose them to the view of the jurors, . . ." The prosecutor and his assistant, in their verified answers, said that the photographs were about 3 x 5 inches in size; that not more than two or three of them were ever exposed to view; and that this was inadvertently done for perhaps a few seconds, at a distance of perhaps seven feet from the jury, while the prosecutor was engaged in cross-examining a witness. The trial judge stated in open court that he did not see the incident, and the only witness offered to substantiate the charge was the official reporter. She testified:

"Q. When you looked at Mr. Dennis (the prosecuting attorney), did he hold up any of those pictures, whatever they were, for the jury to look at?

"A. I didn't get that impression. I saw them as he was handling them at his desk . . . .

"Q. In other words, you could see straight across there and see a part of this picture he had that faced you?

"A. Yes."

At the conclusion of this evidence the judge said: "I was in some doubt until this testimony as to what had taken place, but you have convinced me by your examination of this witness that these pictures were not facing the jury; they were facing the court reporter; she said that she was looking right straight at them." The motion to set aside the submission was then overruled.

The assertion that we misstated the record in the original opinion is based upon an entire misunderstanding and lack of comprehension of what constitutes the record on appeal. In an effort to demonstrate that the trial judge reached the wrong conclusion upon the evidence of the court reporter, the

appellants' counsel included in the original brief a printed floor plan of the court room which purports to be drawn to scale and to disclose the location of the jury box, the reporter's desk, the witness chair and tables used by attorneys, and it was argued in the brief that this floor plan, vouched for by appellants' attorney, demonstrates that the trial court reached a wrong result. This diagram was never in evidence but was prepared by appellants' counsel after the trial. It has no place in the record and it is most surprising that any member of this bar should contend that it is entitled to any consideration.

The appellants also complain because we did not pass upon instructions 4 and 18 given on the court's own motion, and instructions 20, 49, 57 and 60 tendered by the appellants and refused. The matter of the instructions was sought to be presented by Propositions X, XI, XII, *supra*. These propositions were not in accordance with the requirement of Rule 2-17f and the points stated thereunder were too general in character to present anything for review under the rule stated in *Baltimore & Ohio R. Co.* v. *Pertics, supra.* The insufficiency of the evidence was joined in Proposition II with the giving of two and the refusal of five instructions. This was improper, but we said in the original opinion that we had reviewed the evidence and had found it sufficient to sustain the conviction of the appellants as to whom the judgment was affirmed.

The appellee devoted twenty-five (25) printed pages of its original brief to a recital of evidence sufficient to sustain the verdict, giving the names of the witnesses and the substance of their testimony as the same related to the establishment of every essential ingredient of the crime charged. Counsel for

appellants suffered this statement to stand unchallenged in their reply brief and at oral argument, except as to one appellant in whose favor the attorney general subsequently confessed error.

"It is . . . . incumbent upon counsel who believe that the facts are incorrectly stated, or the record not accurately represented, to contradict or explain the statements of their opponents. If they do not make the necessary corrections or explanations the court will accept that made by their adversaries as true and accurate." *Milburn* v. *Phillips* (1893), 136 Ind. 680, 700, 34 N. E. 983, 36 N. E. 360.

In our initial consideration of this case we went farther than an appellate tribunal should be expected to go in a conscientious effort to notice every substantial question which the most liberal interpretation of our rules of appellate procedure would permit us to review. We have now carefully considered the appellants' brief on rehearing, together with every suggestion affecting the substantial rights of the appellants that has come to our attention. No reason for a different result has been found.

The intemperate language appearing in the appellants' briefs has been attributed to an unfortunate lack of comprehension of the respect due the courts on the part of their counsel, rather than as a manifestation of deliberate discourtesy.

The petition for rehearing is denied.

NOTE.—Reported in 49 N. E. (2d) 533.