Alvin CLARK, Plaintiff,

v.

Henry ELLENBOGEN, Michael R. Stabile and Ralph E. Ord, Jury Commissioners of Allegheny County, Pennsylvania, Defendants.

Civ. A. No. 70-185.

United States District Court,
W. D. Pennsylvania.

Sept. 23, 1970.

Allen N. Brunwasser, Pittsburgh, Pa., for plaintiff.

Robert W. Duggan, Dist. Atty. of Allegheny County, Maurice Louik, County Sol., Francis A. Barry, Deputy County Sol., Glenn C. Jones, Asst. County Sol., Pittsburgh, Pa., for defendants.

Before ALDISERT, Circuit Judge, and DUMBAULD and WEBER, District Judges.

## OPINION

DUMBAULD, District Judge.

Before reaching the merits of the case at bar, we must consider defendants' motion that this Court should "abstain" from decision of the instant case until the courts of Pennsylvania dispose of the pending criminal proceedings against plaintiff.

We are understandably reluctant to rest our decision upon the shifting sands of the doctrine of "abstention" if other alternatives are available. To wander in the domain of abstention is to find oneself in a "darksome wood" or "obscure forest."[1] No aspect of the administration of justice in federal courts is beset with more uncertainty and troublesome dubitation.

At one extreme, abstention might be criticized as denial of justice, an evil condemned by Magna Charta.[2] At the other extreme, non-abstention might result in premature and unnecessary involvement in delicate constitutional questions. As acknowledged by the learned

---

1. Nel mezzo del cammin di nostra vita
Mi ritrovai per una selva oscura
Che la diritta via era smarrita.
   Dante Alighieri, Inferno.

2. "Nulli vendemus, nulli negabimus aut differemus rectum vel justiciam." Cap. 39, quoted in Dumbauld, The Constitution of the United States, 5, 366–67 (1964).

draftsman of the American Law Institute's proposed revision of the abstention rules, "There is, then, no wholly satisfactory answer." [3]

It would be unprofitable to pause and endeavor to reconcile the spectrum of conflicting Supreme Court decisions[4] dealing with this topic. We need not try to "find meaning in the meaningless" or "paths in the eternal darkness." [5] It suffices to say that, however the boundaries and limits of the doctrine of abstention may be delineated, the case at bar is not one where abstention might be appropriate.

Stated simplistically, the substance of the doctrine of abstention is that when there is involved in a case a novel, intricate, difficult, or doubtful question of State law, which has not been but in the near future will be decided authoritatively by the State courts, and the decision of the question of State law will probably be controlling with respect to disposition of the case and will relieve the federal court from deciding a novel, intricate, difficult, or doubtful question of federal constitutional law, then the federal court should abstain.[6]

Plainly, the case at bar does not fall within this category. On the contrary, this case is one where, once the facts are established, it will be a simple matter for this Court to determine whether the procedure of jury selection followed in Allegheny County conforms with the statutory provisions of Pennsylvania law and the established federal constitutional principles set forth in pronouncements of the Supreme Court of the United States.

Turning then to the merits of the case, the Court are unanimously agreed that technically we might well dismiss the case because of plaintiff's failure to meet his burden of proof. At the hearing, neither side offered any evidentiary material whatever to show what was in fact done in connection with the jury selection process. One member of the Court believes that we need go no further, but should dismiss the case upon this ground.

The majority of the Court, however, feel that in a matter of such public interest and importance, involving the fundamental right to jury trial and the basic procedures of law enforcement, it would be more satisfactory to know what the actual facts regarding the matter are before disposing of the case.

At the hearing the Court suggested that the parties should submit proof of some kind regarding the actual practice pursued in jury selection. Affidavits have now been submitted by both parties.[7] Accordingly, the majority of the Court believe that there is an adequate factual basis for a determination of the propriety of the practice pursued.

Fundamentally, if the slate were clean, we would be free to accept the principle that a State should be free to regulate the manner of selecting juries

3. ALI, Division of Jurisdiction between State and Federal Courts, Tentative Draft No. 6, commentary on § 1371, p. 206.

4. *E. g.* Ex parte Royall, 117 U.S. 241, 251, 6 S.Ct. 734, 29 L.Ed. 868 (1886); Thompson v. Magnolia Petroleum Co., 309 U.S. 478, 483–484, 60 S.Ct. 628, 84 L.Ed. 876 (1940); Alabama Public Service Commission v. Southern Ry., 341 U.S. 341, 345, 349–351, 71 S.Ct. 762, 95 L.Ed. 1002 (1951) [for abstention]; Allegheny Co. v. Frank Mashuda Co., 360 U.S. 185, 187, 79 S.Ct. 1060, 3 L.Ed.2d 1163 (1959); Baggett v. Bullitt, 377 U.S. 360, 375–379, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964) [against abstention].

5. Wie wundervoll sind diese Wesen,
   Die, was nicht deutbar, dennoch deuten,
   Was nie geschrieben wurde, lesen.
   Verworrenes beherrschend binden
   Und Wege noch im Ewig-Dunkeln finden.
   Hugo von Hofmannsthal, Der Tor und der Tod.

6. For a summary of the abstention doctrine. See Wright, Law of Federal Courts (2nd ed. 1970), sec. 52.

7. Defendants have also tendered a "Supplemental Affidavit," which was filed after the time prescribed by the Court, and has not been considered in the preparation of this opinion or in the decision of the case.

as it sees fit, just as it is free to mold in general the details of its system of judicial administration. See authorities cited in Dumbauld, The Constitution of the United States, 390 (1964). There should be no intrusion by federal judicatories with the operation of a State system of administering justice in the absence of a clear violation of some specific constitutional provision, or (what amounts to the same thing stated differently) a lack of fundamental fairness or flagrant inequality (which would constitute a violation of the Fourteenth Amendment). Thus a State should be able to impose residence requirements and property qualifications, both for jurors and voters. In the venerated language of George Mason's Virginia Bill of Rights, a State should be free to limit participation in the political process to persons "having sufficient evidence of permanent common interest with, and attachment to, the community." Article 6, quoted in Dumbauld, The Declaration of Independence, 169 (1950).

■ However, we are bound by decisions of the Supreme Court of the United States, and the doctrine of Turner v. Fouche, 396 U.S. 346, 363, 90 S.Ct. 532, 24 L.Ed.2d 567 (1970) seems to outlaw limiting public office to property holders. It is true that this case is not entirely on all fours with the case at bar, as it relates to school directors rather than jurors. But the same reasoning would apply, and the conclusion must be reached that if the Pennsylvania statute limits jurors to taxpayers assessed as owners of real property, the statute must be deemed unconstitutional. See also Kramer v. Union School District, 395 U.S. 621, 632, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969); Cipriano v. City of Houma, 395 U.S. 701, 706, 89 S.Ct. 1897, 23 L.Ed.2d 647 (1969); Shapiro v. Thompson, 394 U.S. 618, 627, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969).

It should be noted that the *Fouche* case also invalidated the Georgia method of selecting jurors. But it is clear in the case at bar that we are not confronted with a classical case of invidious discrimination or systematic exclusion of any particular class of persons from service as jurors. Cf. Ballard v. United States, 329 U.S. 187, 195, 67 S.Ct. 261, 91 L.Ed. 181 (1946). The *Ballard* case was one involving exclusion of women as jurors. It should be noted that there were men as well as women defendants involved in that case, all of whom benefited by the ruling which invalidated the method of selecting the jury.

■ If therefore the Pennsylvania statute limits jurors to owners of real estate, any defendant convicted by such a jury would be entitled to raise the question. It is immaterial and irrelevant that plaintiff in this case is black, and that he is also himself a substantial property owner and taxpayer.

■ Likewise it seems clear that if the Pennsylvania law does require that jurors be selected only from property owners, it is not saved from constitutional invalidity by reason of its disregard in practice. If it be true that in practice jurors are selected from a pool of names comprising all residents of the county, the infirmity would continue to exist if the terms of the statute itself clearly forbid such a method of selecting jurors and require that only property holders be chosen. If the statutory requirements established by Pennsylvania laws are disregarded, the "jury" thus selected would be nothing but a vigilante group, or a Captain from Koepenick. A casual group of twelve stragglers brought in from the courthouse lawn would have just as much authority to serve as jurors and to pass upon the life and property of citizens.

In the well known words of Bracton *"ipse autem rex non debet esse sub homine sed sub deo et sub lege, quia lex facit regem."* ("For the king ought not be under any man, but under God and the law, since the law makes him king."). Bracton, *De Legibus et Consuetudinibus Angliae*, II, 33 (Woodbine's edition, 1915). Likewise juries are constituted by the law. Their authority to pass upon the life, liberty, and property

of citizens must be conferred by law. *Lex facit juratorem* just as *lex facit regem*. Nothing else suffices to empower a juror to act in that capacity as an important instrumentality in the system of administering justice according to law.

■ The attempted exercise of judicial power otherwise than in accordance with the law is just as void as the attempted exercise of legislative power otherwise than in accordance with the terms of the constitution. In the words of the English political philosopher John Locke: "When any one, or more, shall take upon them to make laws whom the people have not appointed so to do, they make laws without authority, which the people are not therefore bound to obey." Legislation not enacted in the manner prescribed by the people would lack "that which is absolutely necessary to its being a law, the consent of the society." [8]

*Mutatis mutandis,* the same infirmity would attach to a jury not selected or constituted in the manner prescribed by law.

We turn now to the controlling question as to what the Pennsylvania statute does require. 17 P.S. § 1279 lists the grounds for disqualification or exemption or excusability of jurors. Subsection (a) reads "He or she shall be an American citizen not less than twenty-one years of age, taxed, and residing in the respective county."

It will be noted that no person can be found qualified for jury service unless the person is "taxed."

■ Defendants contend that nowadays everyone is taxed. The law does not specify any particular form of tax that must be paid in order to qualify to serve as a juror. In our judgment payment of the general sales tax or even of federal income tax would qualify a juror under this provision.

Conceivably there may be persons who by reason of indigence and ingenuity in purchasing only untaxed articles of food and clothing may succeed in escaping all forms of federal, state, and local taxation. However this contingency may fairly be disregarded as *de minimis*. Hence the provisions of 17 P.S. § 1279(a) do not involve any unconstitutionality.

But it will be noted that the qualifications prescribed in 17 P.S. § 1279 are ascertained only after prospective jurors have been selected in the manner prescribed in 17 P.S. § 1277, from a "list of taxables."

What are the criteria for inclusion in this "list of taxables?" Compilation of such a list is governed by 17 P.S. § 1276. It is there provided that the jury commission "shall procure from the county commissioners * * * or such other county officer or officers having the information, the names of all persons assessed for the purpose of taxation, arranged alphabetically." The list is to be brought up to date each year, and for that purpose the jury commission is authorized to "inspect any assessment list or book or list of taxables in any of the offices of the respective counties, * * * and in addition to said names the list shall contain the occupation and residence address of each of such."

It will be noted that the salient features of this statutory provision are that the names must be procured from county officers, and shall be the names of "persons assessed for the purpose of taxation."

What persons do county officers assess for the purpose of taxation?

Turning to legislation concerning assessment for county taxation, our research indicates that 72 P.S. § 4821 deals with personal property tax for county purposes. 72 P.S. § 5020-201 describes the subjects of taxation for county purposes, notably real estate, occupations, and "All other things and persons now taxable by the laws of this

---

8. These extracts from Locke's Two Treatises of Government are quoted in

Dumbauld, The Constitution of the United States, 15 (1964).

Commonwealth for county, city and school purposes." 72 P.S. § 5020–202 abolishes county tax on trades, occupations, and professions in counties of the second class.

Most important however are the provisions of 72 P.S. § 5020–404 which declare that it shall be the duty of the assessors in counties of the second class "to prepare a list of all residents and inhabitants in such counties over the age of twenty-one years, and return the same to the proper county authorities with other taxable property as provided by law." In like vein is 72 P.S. § 5505 which authorizes the taxing authorities of any political subdivision, except cities of the first and second class and school districts of the first class and first class A, to "provide for an annual preparation of a list of residents or inhabitants of such political subdivisions over twenty-one years of age, by employees to be appointed and paid by such taxing authority, to be used in the assessment and levy of its occupation, per capita or other head tax." A copy of such authorization is to be given to the regular tax assessor, who shall thereafter be relieved of furnishing to such taxing district a list of the residents or inhabitants thereof.

From the foregoing survey of legislation relating to assessment for the purpose of county taxation, it appears, especially from 72 P.S. § 5020–404, that there is statutory authorization for the compilation of a list of all residents in Allegheny County, whether property owners or not, for the purpose of assessment for county taxation. Such a comprehensive "list of taxables" in the hands of the appropriate county officers would constitute a list of "names of all persons assessed for the purpose of taxation" as contemplated in 17 P.S. § 1276 as the source from which the names of jurors are to be obtained by the jury commission.

■ From this it follows that if in fact the jury commission uses lists containing the names of all residents (and not merely property owners) the use of such lists is authorized by Pennsylvania law, and that the jury commission is not acting ultra vires or in excess of its statutory authority. It also follows that the procedure does not violate any requirements of federal constitutional law.

■ And from the record in this case we are warranted in finding as a fact, on the basis of the proof submitted, that the jury commission actually does select juries by using lists containing the names of all residents, not merely of property owners.

■ Defendants' affidavit squarely states that "The Commission selects jurors from an alphabetical list of citizens of Allegheny County. This list is made up from two sources: 1) all owners of real estate as appear on the Tax Books; 2) all other citizens over Twenty-one years of age." Plaintiff's affidavit does not establish the existence of any exclusionary or discriminatory policy or practice, but merely calls attention to practical difficulties; for example it is said that the lists are not perfect and complete, since some residents can not be located, and the staff is not large enough to enable sufficiently diligent efforts to be made to track down those who can not be found. Plaintiff also questions the sufficiency of the excuses put forward by prospective jurors in order to be excused from jury service; and supplies information regarding the incidence of unemployment, home ownership, and other data which do not bear directly upon the question whether a bona fide effort to list all residents is made. From the affidavits of both parties we are warranted in finding that the jury list is, in principle, composed of all residents, whether property owners or not, and that incidental incompleteness, due to practical difficulties, does not amount to an exclusionary or discriminatory policy or practice such as is constitutionally forbidden by the *Ballard, Fouche,* and other cases. As Justice Holmes would say, "it is no more than the imperfection of man, not a denial of constitutional rights." Chicago

Life Ins. Co. v. Cherry, 244 U.S. 25, 30, 37 S.Ct. 492, 493, 61 L.Ed. 966 (1917).

Consequently, in view of the absence of any indication of a classical case of invidious discrimination, as has previously been mentioned, we conclude that the method of jury selection now being employed in Allegheny County is valid and constitutional. There is therefore no ground for interference by the federal judiciary, and plaintiff's action should be dismissed.

We are glad to note that a similar conclusion was reached, in a case involving the composition of grand juries in Allegheny County, by Judge van der Voort in his opinion of September 4, 1970, in Commonwealth v. David Houston and Edmund L. Fuller, Misc. No. 250, Feb. Session, 1970, and Commonwealth v. Jan N. Carlson, et al., Misc. No. 223, Feb. Session, 1970, in the Criminal Division of the Court of Common Pleas of Allegheny County.

Accordingly, the action will be dismissed.

GERALD J. WEBER, District Judge.

I concur in the result, but I would dismiss for the failure of the plaintiff not only to carry the burden of proof but in fact to produce any proofs at the time of the hearing.