DOYLE POPPLEWELL, JR.; BENNIE MAYNARD *v.* STATE OF INDIANA.

[Nos. 1077S761 and 1277S823. Filed October 3, 1978.]

*Kenneth T. Roberts, Wilson, Coleman & Roberts,* of Indianapolis, for appellant Popplewell; *John F. Ittenbach,* of Indianapolis, for appellant Maynard.

*Theodore L. Sendak,* Attorney General, *Joseph R. Stevenson,* Deputy Attorney General, for appellee.

PRENTICE, J.—Defendants (Appellants) were jointly tried on charges stemming from the same incident. In the trial by jury, Maynard was convicted of the Commission of a Felony While Armed, to-wit: Robbery, Ind. Code § 35-12-1-1 (Burns 1975) and sentenced to thirty (30) years imprisonment. Popplewell was convicted of the Infliction of a Physical Injury While in the Commission of a Robbery, Ind. Code § 35-13-4-6 (Burns 1975) and sentenced to life imprisonment. Although their appeals had been separately filed and briefed, they have been consolidated by this Court pursuant to Appellate Rule 5 (B) and present the following issues:

(1) The admissibility of identification testimony over objection premised upon an allegedly impermissibly suggestive pre-trial photographic identification procedure.

(2) Denial of a defendant's motion for a continuance premised upon the presentation of a witness who was not listed as a State's witness in response to a discovery order.

(3) The admission into evidence of certain of State's exhibits over the objection that a proper foundation therefor had not been laid.

Only issue number 1 is relevant to Popplewell's appeal.

## ISSUE I

A pre-trial motion was filed to suppress evidence of a prior photographic identification of the defendants which had been made by the victim. Grounds for the motion were that the procedure therefor had been impermissibly suggestive, in that the identifying witness, who was the victim of the crime, was aware that two suspects had been arrested and that their photographs were among those displayed to him. A hearing was had thereon, and the motion was overruled. At trial, the same objection was made and overruled; and a further objection to the victim's being permitted to make an in-trial identification of the defendants was also overruled.

During the early morning hours of February 22, 1977, the victim became acquainted with the defendants while drinking at a tavern. The three talked for approximately thirty minutes and then left to go to a house where the defendants were to procure a prostitute for the victim. Popplewell rode with the victim in his truck, while Maynard led the way in his automobile. When they reached the house, all three went inside. The victim was then beaten, robbed and taken to his truck and driven to an isolated area where the defendants indicated that they intended to kill him. The victim escaped, however, when the defendants became frightened by an approaching vehicle.

Altogether, the victim spent approximately three and one-half to four hours in the company of the defendants. He admitted to having felt the effects of the alcohol that he had consumed but denied being "drunk" and maintained that he had his wits about him and knew what was going on.

On the day following the beating and robbery, the victim was taken to police headquarters, where he looked through

several "mug" books. No identification was made at that time. Two or three weeks later, the victim learned from a newspaper article that two suspects had been arrested. His wife made inquiry of the police as to the correctness of such information, and it was verified. A day or two later, a police officer telephoned the victim's wife, told her that they had arrested two suspects and that her husband should come to headquarters to see if he could identify them from some pictures. When the victim went to police headquarters, he was shown twelve photographs, all of white men with mustaches and being of the same general appearance. The victim viewed the photographs one by one and upon coming to the photographs of the defendants he selected them without hesitation as photographs of the two who had beaten and robbed him.

The claim of impermissible suggestivity is that the police had made the victim aware that the pictures of the arrested suspects would be among those he would view. The practice of the police of sometimes indicating that they suspect one of the persons pictured when exhibiting photographs to a witness has been criticized in *Simmons* v. *United States,* (1968) 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247, as having a potential for inducing a misidentification which the witness is, thereafter, likely to believe and retain. This Court agreed, and in *Sawyer* v. *State,* (1973) 260 Ind. 597, 298 N.E.2d 440, said that such a disclosure "needlessly decreases the fairness of the identification process." Nevertheless, the rule from *Simmons, supra,* and *Sawyer, supra,* is " * * * that convictions based on eyewitness identification at trial following a pre-trial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."

In viewing the totality of the circumstances, we are im-

pressed with the length of time and the circumstances under which the victim had been with the defendants, the number of photographs contained in the display (twelve in all) and their similarity in appearance, the witness' prior viewing of police file photographs and correct rejection of all, and the swiftness and certainty with which he made his selection when the defendants' photographs appeared. All of these factors meld to register a high degree of reliability. True, the officer presenting the display should not have indicated that the suspects' photographs were included; but we are firm in our conviction that such error did not, in this case, influence the victim's selection.

It should also be noted that the officer's error was not a deliberate effort to influence the victim's choice. The officer knew that the victim had previously learned that suspects had been arrested.

We find no error in the admission of the evidence disclosing the out of court identification. Accordingly, the issues concerning the correctness of permitting the in court identifications are moot.

## ISSUE II

Under pre-trial discovery orders, the defendant, Maynard, and the State exchanged their lists of witnesses. Maynard listed the name of his wife. The State did not. However, at the commencement of the trial, before the introduction of any evidence, the State announced it that it would call Mrs. Maynard. A defense motion for a continuance was denied, and we find no error here. Maynard's counsel was advised by the court that he could interview the witness during a noon recess that proceeded the presentment of the State's evidence; but he declined, advising that he had already talked to her. He was also advised of the testimony anticipated to be obtained from her.

The sanctions for failure to comply with discovery orders are discretionary, not mandatory. *Lund* v. *State*, (1976)

264 Ind. 428, 345 N.E.2d 826; *Block* v. *State*, (1976) 265 Ind. 569, 356 N.E.2d 683. The purpose of granting a continuance under such circumstances is to compensate for surprise by permitting the aggrieved party time to learn and to prepare. It is not to be regarded as a "bonus" awarded without regard to its need in the furtherance of fair trial rights.

Mrs. Maynard's testimony linked Maynard to the house the victim had identified as the one to which he had gone with the defendants. She stated that she and Maynard knew its occupants, Mr. and Mrs. Price, and that both had visited them on several occasions. Mrs. Price testified as a witness for the defendants, and although she denied that they were there on the night of the crime, she verified the testimony of Mrs. Maynard. Thus, it does not appear that there was any element of surprise to Maynard in his wife's testimony, nor does it appear that it was subject to rebuttal.

## ISSUE III

The State sought to admit into evidence seven photographs of the house where the crime allegedly occurred. The photographs were introduced during the State's direct examination of the victim, who stated that each photograph was a true and accurate representation of that which it purported to portray. Defendant Maynard objected to their admission upon the grounds that, despite a discovery order which directed "true copies of all photographs which the State intends or may offer into evidence," to be provided, he had not seen the pictures until trial. The defendant's objection was sustained, and the photographs were ruled inadmissible; however, the victim's description of the photographs was allowed to stand on the record without objection.

During the defendant's direct examination of Mrs. Price, she was asked to identify each of the photographs previously introduced by the State. She was able to identify Nos. 5, 6, and 7 as true and accurate representations of her house.

They were introduced into evidence, and admitted without objection. On cross examination, the State again attempted to introduce two of the remaining photographs over the defendant's objection that a proper foundation had not been laid as to their accuracy. The trial court ruled that since the defendant had opened the door by introducing part of the State's tendered exhibit, the remaining photographs, Nos. 1, 2, 3, and 4, were admissible as well.

Maynard's sole contention on appeal with regard to these photographs, is that a proper foundation had not been laid showing them to be an accurate representation of the things they purported to portray. *Johnson* v. *State*, (1972) 258 Ind. 648, 283 N.E.2d 532. Although it is true that Mrs. Price was not able to provide the proper foundation for all four of the remaining photographs, this foundation had previously been supplied by the victim.

We find no reversible error. The judgments of the trial court are affirmed.

Givan, C.J. and DeBruler, Hunter and Pivarnik, JJ., concur.

NOTE.—Reported at 381 N.E.2d 79.