Clyde D. WOOTEN, Jr.,
Defendant-Appellant,

v.

STATE of Indiana, Plaintiff-Appellee.

No. 1–1180A322.

Court of Appeals of Indiana,
First District.

March 31, 1981.

Gregory D. Ball, Richmond, for defendant-appellant.

Linley E. Pearson, Atty. Gen., Carmen L. Quintana, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

NEAL, Presiding Judge.

This is an appeal by defendant-appellant Clyde D. Wooten, Jr. (Wooten) from a conviction by a jury in the Wayne Superior Court No. 1 of battery under Ind.Code 35–42–2–1 (Supp.1979).

We affirm.

## STATEMENT OF THE FACTS

The evidence most favorable to the State is as follows: David Phillips, age 21 and a resident of Daleville, Indiana, at approximately 11:00 a. m. on October 20, 1979, was walking along a sidewalk in Richmond, Indiana, with his wife. An automobile driven by Wooten, and containing a passenger, stopped. Wooten and the passenger jumped out of the automobile, Wooten brandishing a jack. Then Wooten swore at Phillips, swung the jack at him, and threatened to shoot him. Upon Phillips' wife's screaming that she was going to call the cops, Wooten desisted; he and his passenger jumped back in the car and ran Phillips down with the car causing injury to him. Phillips had last seen Wooten the night before at a relative's house where he had observed him for five or ten minutes. Furthermore, Phillips saw Wooten clearly at the scene of the offense for approximately four minutes. Phillips was also able to identify Wooten from a photographic display, as well, as at trial. The identification of Wooten was corroborated by Phillips' wife, Linda.

## ISSUES

The issues presented for review are as follows:

I. Whether the trial court erred in dismissing a juror who was neither a householder nor a freeholder;

II. Whether the trial court erred in refusing to give Wooten's instruction No. 1 relating to treatment of evidence on identification;

III. Whether the pretrial photographic display identification was impermissibly suggestive;

IV. Whether the court erred in refusing to allow Wooten to sit in the gallery among selected persons during eyewitness testimony.

*Issue I. Exclusion of non-freeholder or non-householder from jury*

Defendant claims his sixth amendment right to a jury panel composed of a fair cross section of the community was violated by arbitrarily excluding young people. This challenge grows out of an action of the trial court, taken during the jury voir dire, excusing a young man of unknown age from the panel solely because he was neither a freeholder nor a householder, but who lived at home with his parents. No issue has been raised as to the correctness of the court's application of our statute on the qualification of jurors, but rather the challenge is to the statute itself.

■ Ind.Code 33-4-5-7 establishes as a qualification that a juror, either grand or petit, must be a resident voter of the county *and a freeholder or householder.* Where the legislature has, within its limits of power, declared who shall be competent jurors, such declaration is binding on the court. *Johnston v. State*, (1958) 239 Ind. 77, 155 N.E.2d 129. *Block v. State*, (1885) 100 Ind. 357. In *Holt v. State*, (1977) 266 Ind. 586, 365 N.E.2d 1209, our Supreme Court summarized the rule:

"Due process requires a fair and impartial jury. The right to an impartial jury precludes systematic and intentional exclusion of any particular class of persons, but does not require that any particular class be represented. *Tewell v. State*, (1976) 264 Ind. 88, 339 N.E.2d 792. Although a jury must be selected from a fair cross-section of the community, jurors need not be mathematically proportioned to the character of the community. *Fay v. N. Y.*, (1947) 332 U.S. 261, 67 S.Ct. 1613, 91 L.Ed. 2043. The burden of demonstrating prejudicial discrimination is on the defendant. In addition, trial courts have discretionary authority to excuse prospective jurors. *Brown v. State, supra*, [(1977) 266 Ind. 82, 360 N.E.2d 830] *Tewell v. State, supra.* Certainly this discretion must not be exercised illogically or arbitrarily, but a reasonable exercise of discretion by the trial court will not be interfered with on appeal."

266 Ind. at 590-91, 365 N.E.2d 1209.

■ Although jury selection systems are required to draw prospective jurors from a fair cross section of the community, reasonable qualification may be imposed, notwithstanding the fact that they may detract from the cross section present in the actual jury pool. *Patterson v. State*, (1975) 263 Ind. 55, 324 N.E.2d 482.

No case has been cited construing the constitutionality of the householder qualification for a juror and we have found none.[1] However, our Supreme Court, in *Steven v. State*, (1976) 265 Ind. 396, 354 N.E.2d 727, *pet. reh., aff'd*, 357 N.E.2d 245, applied the requirement without question, although the only issue there was whether the grand juror in question was a householder. The court explained the reason for the rule as follows:

"By it, the Legislature intended that grand jurors be actual members of the community served by the grand jury.

1. In our examination of federal law on jury selection, at 28 U.S.C. § 1864 (1968) and including the case law appended to its subsections, the precise issue of householder or freeholder status as a constitutionally acceptable limitation on qualified persons for jury selection does not arise. Federal cases describe as unconstitutional jury selection processes whereby cognizable groups or distinctive classes such as sex, race, ethnic minorities or poor are systematically excluded. In our view, a householder is not an identifiable group, but rather a flexible status cutting across all identifiable groups or classes.

They must also have had the experience of making important and binding practical decisions of everyday living. And they must be capable of making important decisions independently of family or relatives or others."

265 Ind. at 401, 354 N.E.2d 727.

■■■ Cases do exist on the voter and property requirement. Furthermore, the requirement that a juror be a voter is not constitutionally infirm. *McPherson v. State*, (1978) Ind.App., 383 N.E.2d 403; *Baum v. State*, (1976) 264 Ind. 421, 345 N.E.2d 831. A jury selection system which excludes from jury service all persons who do not own real property is, prima facie, systematic discrimination and unconstitutional. However, a system by which the jury is selected from assessment rolls of the owners of real *and* personal property is not unconstitutional *per se. Leggroan v. Smith*, (10th Cir. 1974) 498 F.2d 168; *Brown v. Allen*, (1953) 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469. Use of such assessment rolls can be in such a way as to be an unconstitutional discrimination. *Leggroan, supra.* In *Carter v. Jury Commission of Greene County*, (1970) 396 U.S. 320, 90 S.Ct. 518, 24 L.Ed.2d 549, the Supreme Court of the United States recited:

"The States remain free to confine the selection [jurors] to citizens, to persons meeting specified qualifications of age and educational attainment, and to those possessing good intelligence, sound judgment, and fair character."

396 U.S. at 332, 90 S.Ct. at 524.

■■ The requirement that a juror be a taxpayer (since practically everyone pays tax in some form), is not unconstitutional *per se. Clark v. Ellenbogen*, (1970) 319 F.Supp. 623, Aff'd, 402 U.S. 935, 91 S.Ct. 1615, 29 L.Ed.2d 104.

■■■ The statute setting forth the jury qualifications as that of a freeholder or householder is, in our opinion, a status classification based on maturity, as explained in *Stevens, supra.* Thus, it is not unreasonable and unconstitutional *per se*, and is within the power of the General Assembly to prescribe. *See Carter, supra.*

*Issue II. Denial of Wooten's instruction No. 1*

The court refused to give to the jury Wooten's instruction No. 1, which reads as follows:

"An important issue in this case is whether or not there has been reliable eyewitness identification of the perpetrator of the crime. The State of Indiana has the burden of proving the perpetrator's identity beyond a reasonable doubt. We do not require any eyewitness to be absolutely certain about the correctness of his or her identification, but you, the jury, could not convict this defendant unless you were convinced beyond a reasonable doubt of the accuracy of the identification of the defendant to have been the perpetrator of the crime charged.

Identification testimony is an expression of belief or impression from purported memory. It's value depends on many factors, among which are (a) whether the witness observed the offender's face correctly, (b) whether the witness retained that perception without distortion in memory, (c) whether the witness is able to retrieve a faithful version of that remembered image when called upon to identify a suspect at some later time, and (d) whether the witness can describe or articulate that memory with a degree of precision.

In evaluating the identification testimony of a witness, you should also consider the following:

1. Are you convinced that the witness has the capacity and an adequate opportunity to observe that perpetrator? Whether the witness had such an adequate opportunity or not could be affected by such matters as the time period involved, distances, lighting conditions, whether the perpetrator was a total stranger or had been seen or known before, and whether any stress or fear-provoking situation altered the witnesses' perceptual ability at the time of the observation.

2. Are you convinced that the identification made by the witness after the offense was the product of his or her own recollection? If the subsequent identification may have been influenced by the circumstances under which the defendant or his photograph was presented to the witness, you should scrutinize that identification with great care.

3. Finally you must consider the credibility of each identification witness as you would any other witness, considering whether he or she is truthful and whether he or she made reliable observation and recollection.

I again emphasize that the burden of proof on the prosecutor extends to every element of the crime charged, and this specifically includes the burden of proving beyond a reasonable doubt the identity of the perpetrator to be one and the same as the defendant. If, after examining the testimony, you have a reasonable doubt as to the accuracy of the identification, you must find the defendant not guilty."

Instead the court gave its own instruction No. 3 as follows:

"You are the exclusive judges of the evidence, the credibility of the witnesses and of the weight to be given to the testimony of each of them. In considering the testimony of any witness, you may take into account his or her ability and opportunity to observe; the memory, manner and conduct of the witness while testifying; any interest, bias or prejudice the witness may have; any relationship with other witnesses or interested parties; and the reasonableness of the testimony of the witness considered in the light of all of the evidence in the case.

You should attempt to fit the evidence to the presumption that the defendant is innocent and the theory that every witness is telling the truth. You should not disregard the testimony of any witness without a reason and without careful consideration. However, if you find that the testimony of a witness is so unreasonable as to be unworthy of belief, or if you find so much conflict between the testimony of witnesses that you cannot believe all of them, then you must determine which of the witnesses you will believe and which of them you will disbelieve.

In weighing the testimony to determine what or whom you will believe, you should use your own knowledge, experience and common sense gained from day-to-day living. You may find that the number of witnesses who testify to a particular fact, on one side or the other or the quantity of evidence on a particular point does not control your determination of the truth. You should give the greatest weight to that evidence which convinces you most strongly of its truthfulness."

■ The court's instruction No. 3 was identical to the instruction approved by our Supreme Court in *Lottie v. State*, (1980) Ind., 406 N.E.2d 633. In *Hackett v. State*, (1977) 266 Ind. 103, 360 N.E.2d 1000, the court condemned, as erroneous, credibility instructions which singled out the testimony of identification witnesses. In *Beasley v. State*, (1977) 267 Ind. 396, 400, 370 N.E.2d 360, the refused instruction singled out the identification witnesses' testimony as follows:

" 'An identification made by a stranger, without a sufficient opportunity to definitely fix features or characteristics, must be an opinion or conclusion of the identifying witness.' "

Again the Supreme Court observed:

"Defendant's tendered instruction No. 7 could not have been properly given. We have previously stated that the trial court should not single out the testimony of any witness and attack its credibility or indicate an opinion as to the weight that should be accorded to it."

267 Ind. at 401, 370 N.E.2d 360. We therefore are of the opinion that Wooten's tendered instruction No. 1 was erroneous, and consisted of subject matter adequately covered by the court's instruction No. 3. *Bricker v. State*, (1976) 264 Ind. 186, 341 N.E.2d 502. The court did not err in refusing it.

*Issue III. Pretrial identification procedure*

Wooten argues that the pretrial photographic identification of him by Phillips and his wife was impermissibly suggestive. The evidence disclosed that the officers showed Phillips photographs of nine young males of similar build in their late teens or early twenties, whose hair coloring ranged from dark blond to dark. All had longish hair, and wore T shirts or open neck casual shirts. None had beards or facial hair. At the time of the display, shortly before showing Phillips the pictures, the officers told him that the suspect's photograph could possibly be among the pictures. Phillips immediately picked out Wooten. Further, Phillips and his wife identified Wooten at the trial. Wooten contends the suggestion that his photograph was in the display rendered the pretrial identification impermissibly suggestive, and therefore, it was error for the court to admit it. Wooten further complains that his picture was tilted in such a way as to reveal some underlying colored article. How this final matter tainted the display or prejudiced Wooten, he does not explain. We would note that rather than its being impermissibly suggestive, it suggests nothing whatever.

The case of *Popplewell; Maynard v. State*, (1978) 269 Ind. 323, 381 N.E.2d 79, is dispositive of this issue. There, the claim of impermissible suggestivity was made because police officers had informed the victim that the photograph of the arrested suspect would be included in the photographic display. Our Supreme Court reviewed the law as follows:

> "The practice of the police of sometimes indicating that they suspect one of the persons pictured when exhibiting photographs to a witness has been criticized in *Simmons v. United States*, (1968) 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247, as having a potential for inducing a misidentification which the witness is, thereafter, likely to believe and retain. This Court agreed, and in *Sawyer v. State*, (1973) 260 Ind. 597, 298 N.E.2d 440, said that such a disclosure 'needlessly decreases the fairness of the identification

process.' Nevertheless, the rule from *Simmons, supra,* and *Sawyer, supra,* is ' * * * that convictions based on eyewitness identification at trial following a pre-trial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.'"

269 Ind. at 326, 381 N.E.2d 79.

Where eyewitnesses have an independent basis for their in-court identification, apart from the photographic display, their testimony is still admissible at the trial. *Swope v. State*, (1975) 263 Ind. 148, 325 N.E.2d 193. The suggestivity of the pretrial identification procedure is to be determined from a totality of the circumstances. *McHenry v. State*, (1980) Ind. App., 401 N.E.2d 745.

Here the victim had an ample independent basis for identifying Wooten apart from the pretrial identification procedure. The offense was committed in broad daylight. Shortly before its occurrence the same man had attacked Phillips on the sidewalk with a jack and Phillips had observed him for three or four minutes. Phillips had seen Wooten the night before at a relative's house and had observed him for five or ten minutes while there. Phillips' identification was corroborated by his wife, Linda. In the photographic display described above, the selection of Wooten by Phillips was based upon Phillips' own physical description of his assailant. Phillips identified Wooten's photograph immediately. As in *Popplewell, supra,* all these factors collectively register a high degree of reliability. Therefore we cannot say that the photographic identification procedure was so impermissibly suggestive as to give rise to a substantial likelihood of irreparable misidentification.

*Issue IV. In-court identification procedure*

Before the commencement of the trial, Wooten made his motion to the trial court for permission to sit, instead of at counsel table, in the front row of the gallery with three other young men, presumed-

ly of his own choosing, while the eyewitnesses testified. The motion was denied, and Wooten was required to remain at counsel table. Wooten contends that this procedure was prejudicial in that the identification witness simply could infer from his position in the court room that he was the defendant. Wooten cites no authority to support this position except a general reference to Article I, Sec. 13 of the Constitution of Indiana. Further, Wooten makes no cogent argument. Such failure can effect a waiver of the issues. *Guardiola v. State*, (1978) 268 Ind. 404, 375 N.E.2d 1105. However, authority exists which disposes of the issue, and we will treat it on the merits.

A trial court has inherent discretionary power to control its proceedings, and we will reverse its decision only where an abuse of discretion has been demonstrated. *Boyd v. State*, (1979) Ind.App., 396 N.E.2d 920; *Lock v. State*, (1980) Ind., 403 N.E.2d 1360. A defendant sitting in a court room may be required to stand for identification, *Watson v. State*, (1957) 236 Ind. 329, 140 N.E.2d 109, and even be required to exhibit his hands to the jury for identification purposes where a missing finger is relevant. *Springer v. State*, (1978) Ind. App., 372 N.E.2d 466. In *Appelby v. State*, (1943) 221 Ind. 544, 48 N.E.2d 646, 49 N.E.2d 533, our Supreme Court said:

> "There was no impropriety on the part of the trial court in requiring the appellants to stand when they were pointed out by witnesses who did not know them by their names. In *People v. Gardner*, (1894) 144 N.Y. 119, 38 N.E. 1003, it was observed:
>
> > 'It is the right of the prisoner to be in the presence and view of the jury, and it is the right of the prosecution to have him in view of the presiding judge and jury and the counsel engaged in the trial. And whether at any particular time he should stand up or sit down in the presence of the jury must be a matter resting in the discretion of the trial judge, and in no sense can it be said that by the exercise of such discretion his constitutional right is involved.' "

221 Ind. at 551, 48 N.E.2d 646, 49 N.E.2d 533. We have found no authority which gives a criminal defendant a right to "stage manage" trial proceedings, as was attempted here, nor have we found authority for the proposition that a defendant is entitled to an in-court lineup of his own choosing. Such matters rest within the sound discretion of the trial court, and no abuse of that discretion has been demonstrated here.

For the above reasons, this cause is affirmed.

Affirmed.

RATLIFF, J., concurs.

YOUNG, P. J., (participating by designation), concurs.