CLAY JONES, IMA JEAN JONES *v.* STATE OF INDIANA.

[No. 2-275A39. Filed September 16, 1975].

*Jack Quirk,* Muncie, for appellants.

*Theodore L. Sendak,* Attorney General; *John R. O'Bryan,* Deputy Attorney General, for appellee.

LOWDERMILK, J.—The defendants, Clay Jones and his wife, Ima Jean Jones, were charged with murder in the first degree. The jury returned a verdict of guilty of voluntary manslaughter as to each defendant. The only issues presented by their appeal concern the allegedly erroneous admission of certain items of evidence.

## FACTS:

An examination of the evidence most favorable to the State shows that defendant Clay Jones was at the home of one Benton Franklin on Sunday morning, February 17, 1974. Franklin, the deceased Jim Hughes, and two other witnesses were also present. A comment was made by Hughes that caused an argument to ensue between him and the defendant, Jones.

After a short time the defendant left the house, but returned forty-five minutes later accompanied by his wife.

When the two entered the house, Clay Jones was armed with a shotgun and Ima Jean Jones was carrying a rifle. Franklin met them at the kitchen door, and immediately grabbed Clay's shotgun, which discharged into the ceiling. At the same moment Clay shouted "shoot the man in the white shirt." Ima Jean fired her rifle eight or nine times, killing Hughes and wounding Franklin.

Ima Jean and Clay then left the house, took their son who had been waiting in the car to a relative's home, and then went to the police station. There Ima Jean signed a waiver granting permission for the police to seize the two weapons that were in the trunk of their car. The legality of the sub-

sequent search and seizure of these weapons is not challenged here.

The defendants base their appeal on the allegedly erroneous admission into evidence of the following exhibits:

1.   A .22 caliber slug and two shell casings found at the scene of the crime, challenged because of an alleged defect in the proof of the chain of custody;

2.   Two photographs of the decedent, challenged because they were allegedly gruesome and were offered only for the purpose of inflaming the jury;

3.   One photograph of the scene of the crime, challenged because it was allegedly cumulative;

4.   A photograph of a shotgun shell casing, challenged because it had allegedly not been connected to the defendant;

5.   The shell casing itself that is pictured in the above photograph, challenged because it was allegedly cumulative.

## I.

The first items of evidence said to be improperly admitted are the .22 caliber slug and two shell casings found at the scene of the crime. The defendants claim that a proper chain of custody was not established as to these items, inasmuch as the officer in charge of the property room at the Anderson City Lockup, one Lt. Monahan, did not testify at trial. Defendants rely on *Graham* v. *State* (1970), 253 Ind. 525, 255 N.E.2d 652, for support of their contention.

Under the rule established in that case, a foundation must be laid to connect the exhibit offered into evidence with the defendant on trial. The necessary link that needs to be shown is the continuous whereabouts of the exhibit from the time it came into the possession of the police until it was laboratory tested or introduced at trial. The purpose of the rule is to avoid any claim of substitution, tampering, or mistake. *Jones* v. *State* (1973), 260 Ind. 463, 296 N.E.2d 407.

The rule in *Graham* v. *State, supra,* was explained by the

Supreme Court in the case of *Guthrie* v. *State* (1970), 254 Ind. 356, 260 N.E.2d 579, wherein that court said:

". . . The question was simplified in the *Graham* case because there was a clear break in the chain for a six day period. However, where as here, the state has introduced evidence which strongly suggests the exact whereabouts of the evidence, the issue becomes one of probabilities.

Appellee has cited several cases the holdings of which indicate that all possibility of tampering need not be excluded; upon reasonable assurance that the exhibit has passed through the various hands in an undisturbed condition its admission is proper and any remaining doubts go to its weight only. . . ." 254 Ind. at 363, 260 N.E.2d at 584.

In the case at bar, as in the *Guthrie* case, the whereabouts of the items of evidence is not in question. The evidence introduced by the State strongly suggests that the items were in the property room during the time here relevant. The issue therefore turns on a consideration of the probability that tampering, substitution, or mistake occurred in this case.

In weighing such probabilities, the *Guthrie* case once again presents some important distinctions. First, evidence involved in the case at bar is of the type that is not easily tampered with. In *Guthrie,* the distinction was made between a drug, such as heroin, which is similar in form to baking powder or sugar, and other evidence, such as the glass slides that were admitted in the *Guthrie* case. The court found that these glass slides would not be as susceptible to tampering as seized drugs would be in the typical narcotics arrest.

Indeed, shell casings retrieved from the scene of the crime have just recently been held to be not of a fungible nature, and thus not subject to the same rigid chain of custody requirements that drug specimens would ordinarily be subject to. *Loza* v. *State* (1975), 263 Ind. 124, 325 N.E.2d 173.

Second, in the case at bar, as in the *Guthrie* case, there is no indication that evidence was anywhere other than in the

property room under lock and key. In the *Graham* case the evidence was removed from the storage area, and no accounting at all was made for its six-day disappearance. Here, the possibility of the evidence coming into contact with the general public is highly remote.

Finally, the evidence presented in this case did not represent proof of an element essential to the conviction of the defendants, as would be the typical case in a charge of possession or sale of narcotics. Indeed, the evidence in this case was in fact only cumulative, as a separate slug found under the body of the deceased was admitted into evidence without objection.

It has been held that the mere possibility that the evidence might have been tampered with does not make the evidence totally objectionable. *Jones* v. *State, supra.*

This court has held that merely placing the evidence on a shelf in the police laboratory where eight different persons had access to the evidence, none of whom testified in court, would not of itself establish a break in the chain of custody. *Telfare* v. *State* (1975), 163 Ind. App. 413, 324 N.E.2d 270. Nor is evidence objectionable because it was locked in an office by one police officer, and removed therefrom by other officers. *McMinoway* v. *State* (1973), 260 Ind. 241, 294 N.E.2d 803.

We think it clear that the evidence here was properly admitted, and thus any weakness in the chain of custody goes to its reliability and weight, and not to its admissibility. Defendants have not shown how they were prejudiced by the admission of this evidence, and thus if there is any error present, it is harmless error. *Koonce* v. *State* (1975), 263 Ind. 5, 323 N.E.2d 219; *Sexton* v. *State* (1974), 262 Ind. 554, 319 N.E.2d 829; *Hendrickson* v. *State* (1975), 163 Ind. App. 580, 325 N.E.2d 499.

## II.

The defendants next challenge the admission into evidence of two photographs of the decedent, taken at the scene of the

crime. They allege that the photographs do not depict the actual position of the decedent but, rather, showed the decedent after the police had raised his shirt to show certain wounds.

Further, they claim that the photographs were unnecessarily gruesome and were offered only for the purpose of inflaming the jury.

We believe the recent case of *Patterson* v. *State* (1975), 263 Ind. 55, 324 N.E.2d 482, answers both contentions of the defendants in regard to these two pictures. In *Patterson*, three photographs were admitted into evidence over objections identical to those raised in this case. The Supreme Court held:

". . . These exhibits were, to some extent, repetitious, cumulative and gruesome but were, nevertheless, relevant and competent as aids to assist the jurors in orienting themselves and in understanding other evidence. This is true, notwithstanding two of the photographs pictured the victim's body after it had been moved from the exact position in which it was found." 324 N.E.2d at 486.

We find no error in the admission of these photographs.

### III.

Defendants contend that State's exhibit 5 was allowed to be entered into evidence over defense objection that the photograph was cumulative, in that it was alleged to be the same photograph as exhibit 2.

We first note that exhibit 5 was not admitted into evidence, as an examination of the transcript clearly shows. We will assume, as the State does, that defendants' objection is directed at exhibit 4. An examination of the exhibits reveals that the two pictures are not identical, but taken from opposite angles.

Indeed, one is a close-up picture, while the other is a distant wide-angle shot of the whole room.

The Supreme Court, in *Kiefer* v. *State* (1958), 239 Ind. 103, 108, 153 N.E.2d 899, 900, stated:

". . . Even though these photographs representing Exhibits Nos. 10, 11 and 12 may have been, to some degree, repetitious and cumulative, and are gruesome in character, they serve to elucidate and explain relevant oral testimony given at the trial and they were properly admitted for the purpose of showing fully the scene of the crime, the nature of the wounds of the victim, and the condition of the basement immediately after the crime was committed. . . ."

### IV.

The defendants claim error in the admission into evidence of a picture of a spent shotgun shell found at the scene of the crime. They claim that they were not in any way connected with the spent shell, as is required by *Graham* v. *State, supra.*

Both Franklin and Clay Jones testified at trial that the shotgun Clay Jones was carrying discharged when Franklin grabbed the gun from Clay as he entered the kitchen. An officer testified that when he entered the home, the spent shell was on the kitchen floor, and there was a hole in the kitchen ceiling which later was shown to have been made by a shotgun blast. The officer took a picture of the shell and testified in court that it was an accurate representation of the scene of the crime.

The picture here involved and the testimony concerning it was relevant evidence corroborating the previous witnesses' testimony as to what had occurred during the time in question. The Supreme Court held, in *Sexton* v. *State, supra,* that testimony to the effect that defendant had slashed decedent's throat with a large pocket knife which subsequently was knocked from his hand and fell to the floor, was sufficient to allow admission into evidence of a knife which was found open and lying on the floor, in order to corroborate that testimony, even though defendant objected that the knife had not been shown to be connected with the incident. The same rule applies here.

Further, defendants here have failed to show how they were prejudiced by the admission of this evidence, and thus, if any

error was committed, it was only harmless error. *Koonce* v. *State, supra; Sexton* v. *State, supra.*

## V.

Finally, defendants contend that the subsequent admission of the spent shell itself, after the photograph of such shell was admitted, was clearly erroneous, since the actual shell was only cumulative of the facts already before the jury.

The admission of evidence is a matter within the sound discretion of the trial court and absent a clear abuse of such discretion the action of the trial court will be upheld. *Hopkins* v. *State* (1975), 163 Ind. App. 276, 323 N.E.2d 232. Clearly, no abuse can be shown in the case at bar. The defendants have not shown how they were prejudiced by the trial court's action, and thus their appeal on this issue presents no question for review.

## CONCLUSION:

No error being shown in the admission of the above items of evidence, the judgment of the trial court is affirmed.

Robertson, C.J., and Lybrook, J., concur.

NOTE.—Reported at 333 N.E.2d 823.