Charles Thomas COOK, Jr., Defendant-Appellant,

v.

STATE of Indiana, Plaintiff-Appellee.

No. 1–1079A286.

Court of Appeals of Indiana, First District.

April 22, 1980.

Bruce A. Smith, Hayes, Hayes & Smith, Washington, for defendant-appellant.

Theodore L. Sendak, Atty. Gen., Jeff G. Fihn, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

NEAL, Judge.

### STATEMENT OF THE CASE

Defendant-appellant Charles Thomas Cook, Jr., was convicted following a trial by jury of the offense of burglary, Ind.Code 35–43–2–1 (Supp.1979), and sentenced to the Indiana Department of Corrections for five years. Following his conviction, defendant requested that the trial court appoint an attorney to prepare his appeal.

We find no reversible error and, accordingly, affirm the judgment of the trial court.

### FACTS

The facts of this case most favorable to the State are as follows: Ellis Dyer (Dyer) and his son operate a general store in Glendale, Indiana. A burglar alarm is connected between the store and Dyer's home about 115 feet away. On May 13, 1978, at 1:15 a. m., the alarm sounded in Dyer's home. Dyer dressed, picked up a broom, and proceeded to the store, arriving approximately five minutes after hearing the alarm. There he encountered the defendant who was some 15 feet outside the store's open door and 15 feet from Dyer. The area in front of the store was illuminated by a security light and several lighted soft drink machines. Dyer cried out at the defendant who then dropped several objects he was carrying. These were later identified as wristwatches taken from the store. At this point, Dyer fell. The defendant headed for an occupied car that was parked at the side of the store. Dyer got up from the ground, went to the parked car, and told the defendant not to get into the car, lest he would hit the defendant with the broom. Dyer was "half a car length" away from the defendant at this time. The defendant backed away from the car, crossed the road, and hesitated for some time. He was then 22 feet away from Dyer. Defendant then proceeded east on Glendale Road on foot.

The occupant of the parked car, who is unidentified, got out and asked Dyer what was going on. Dyer told him of the burglary and asked him to go to the home of Dyer's son nearby and have him call the sheriff. Declining, the unidentified man drove off. Dyer went to his son's home. His son then called the sheriff, reporting the burglary and that the burglar, a young white male, was last seen proceeding afoot east on Glendale Road. Dyer had examined the store's door and noticed marks indicating that it had been pried open with a rounded tool.

Deputy Sheriff Steven Riney received the report of the burlary at 1:34 a. m., while he was patrolling an area approximately ten miles from the scene of the crime. He was apprised that the burglar had fled east on Glendale Road, and he approached the Dyer store on that road in a westerly direction. At approximately 1:55 a. m., Officer Riney noticed the defendant walking east on Glendale Road about a mile and a half to two miles from the Dyer store. Officer Riney stopped, had the defendant identify himself, and asked him if he wanted a ride. Officer Riney explained that he had a stop to make and then, if everything worked out, he would help defendant get on his way.[1] They then drove to the store. Officer Riney asked defendant to accompany him into the store. The defendant bought a soft drink and entered the store, followed closely by Officer Riney. Upon their entrance, Dyer, who was inside the store, stated spontaneously, "That is the s.o.b. right there." Officer Riney asked Dyer several times if he was sure and Dyer responded affirmatively. Officer Riney then arrested the defendant and gave him the *Miranda* warnings.

### ISSUES

The defendant assigns the following allegations of error for our review:

I. Whether the trial court erred in overruling defendant's motion to suppress evidence relating to the pretrial identification of defendant by Ellis Dyer, the prosecuting witness.

II. Whether the trial court erred in allowing Dyer to make an in-court identification of the defendant.

III. Whether the trial court erred in admitting into evidence a photograph allegedly containing hearsay evidence.

IV. Whether the trial court erred in admitting evidence obtained by the State as a result of the allegedly illegal arrest of the defendant.

---

1. The offer of a ride was made following defendant's explanation as to the reason for his whereabouts. Defendant successfully moved to suppress all testimony relating to anything the defendant said to Officer Riney after he entered his car.

V. Whether the trial court erred in not properly admonishing the jury after sustaining defendant's motion to exclude certain testimony.

VI. Whether defendant was denied a fair trial because of the alleged incompetence of his trial attorney.[2]

VII. Whether the evidence is sufficient to sustain the verdict of the jury.

## DISCUSSION AND DECISION

*ISSUE I*

Defendant argues that the trial court erred in overruling his motion to suppress testimony relating to his pretrial identification by Dyer. He urges that: the confrontation was unnecessarily suggestive and likely to lead to a mistaken identification; Officer Riney could have used less suggestive means to obtain the identification; and Dyer did not have sufficient opportunity to clearly observe the suspect he encountered outside the store.

■ We find no error here. An on-the-scene identification of a suspect which is "unnecessarily suggestive and conducive to irreparable mistaken identification" is a denial of due process. *Stovall v. Denno,* (1967) 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199. Whether the confrontation at issue is to be so characterized is determined by considering the total circumstances. *Stovall, supra; Hampton v. State,* (1977) Ind.App., 359 N.E.2d 276. Pretrial confrontations occurring immediately after the commission of an offense and upon the apprehension of an accused are not per se unduly suggestive even though the accused is the only suspect present. *Wright v. State,* (1972) 259 Ind. 197, 285 N.E.2d 650; *Hampton, supra.* In *Dillard v. State,* (1971) 257 Ind. 282, 274 N.E.2d 387, 389, the Indiana Supreme Court stated that the test in *Stovall, supra,* focuses attention on two different sets of facts:

"(1) The facts bearing on whether the confrontation was conducted in such a fashion as to lead the witness to make a mistaken identification, e. g., how the police asked the witness to attempt the identification, what the witness thought he was doing, the displayed attitude of the police towards the suspect, etc. (2) The facts bearing on how good a chance the witness had to observe the perpetrator of the crime such that any suggestiveness in the conduct of the confrontation could be resisted by the witness and he could make an accurate decision as to whether the man presented was the man who committed the crime. These would include the length of time the witness was in the presence of the perpetrator, the distance of the witness from him, the lighting conditions at the time, capacity for observation by the witness, opportunity to observe particular characteristics of the criminal, etc."

■ We cannot say that the confrontation under review was conducted in such a fashion as to lead Dyer to make a mistaken identification. It is true that Dyer saw the defendant arrive in the sheriff's marked car and thought that the defendant had been picked up as a suspect. Defendant, however, was not handcuffed and did not appear to be in custody. Officer Riney did not elicit an identification by any suggestive questioning; indeed, Dyer made the identification spontaneously. In *Hampton, supra,* 359 N.E.2d at 279, Judge Garrard stated, "The freshness of the event substantially offsets the chance for misidentification presented by the fact of a single suspect in apparent custody." We feel that such is the case here. Further, we believe that, despite the defendant's insistance to the contrary, Dyer had sufficient opportunity to observe the perpetrator in their initial encounter. In this respect, defendant urges that lighting conditions were poor, that Dyer was not wearing his glasses, that Dyer was unable to describe the suspect in any but general terms, and that he was totally unable to describe the unidentified occupant

---

2. Defendant's counsel on appeal was appointed by the court following his conviction and did not participate in the trial.

of the car. We cannot say as a matter of law that the lighting conditions, though shown to be dim, and particularly so on the side of the building where the car was parked, were such as to render an accurate identification impossible. Dyer initially observed the defendant from a distance of 15 feet, then got as close as "half a car length away" when discouraging the defendant from entering the car, and then viewed defendant as the latter hesitated for some time across the road at a distance of 22 feet. There was ample opportunity for Dyer to observe the defendant. Dyer stated that he wore glasses for limited purposes only. Dyer's inability to offer a description of the unidentified occupant of the parked car, whom he encountered on the unlit side of the building, does not render him incapable of identifying the defendant.

Two very recent Indiana cases support our opinion here. In *Nelson v. State,* (1980) Ind., 401 N.E.2d 666, the alleged confrontation was the inadvertent and spontaneous identification of the defendant in the booking room by the victim as she walked by. *McHenry v. State,* (1980) Ind.App., 403 N.E.2d 893, considered the situation wherein the victim, who had shot the defendant during an attempted burglary, was taken to the hospital to identify the burglar within one hour and on a one-on-one basis. The courts in both cases held that the identification procedures were not unduly suggestive and that the later identifications at trial were not tainted by the pretrial identifications.

## ISSUE II

■ Defendant's second issue is related to his first. Here, he contends that the trial court erred in allowing Dyer to make the in-court identification of defendant. He argues that the in-court identification was the result of an overly suggestive pretrial confrontation and that Dyer had no basis for the in-court identification independent of the confrontation. We have determined in Issue I that the pretrial confrontation was not improperly suggestive. We have also determined that Dyer had sufficient opportunity to observe the defendant

outside the store. Dyer's observation of defendant in their first encounter is a sufficiently independent basis upon which to base the in-court identification, irrespective of the confrontation. There was no error in allowing the in-court identification. *McHenry, supra; Nelson, supra; Norris v. State,* (1976) 265 Ind. 508, 356 N.E.2d 204; *Swope v. State,* (1975) 263 Ind. 148, 325 N.E.2d 193; *Carpenter v. State,* (1974) 159 Ind.App. 373, 307 N.E.2d 109.

## ISSUE III

■ Defendant's next contention is that the court erred in admitting into evidence State's Exhibit No. 19, which is a photo of the store with the sheriff's car parked next to it. Officer Riney testified that for the purpose of demonstrating the location of the unidentified car observed at the burglary scene, he, at Ellis Dyer's direction, placed the sheriff's car in that location. He further testified that, absent the sheriff's car, the photo depicted the scene as it existed on the night of the burglary. Defendant objected to the admission of the exhibit on the grounds that the photo contained hearsay evidence, that is, the placement of the sheriff's car at the direction of Dyer who did not testify as to the exhibit. The trial court admitted Exhibit No. 19 and admonished the jury in substance to ignore the sheriff's car. Defendant argues that this positioning of the car is critical to his case because much of the identification took place around the car, and its proximity to existing lights became, thereby, important in determining whether Dyer could identify defendant. Defendant states in his brief, "However, only Dyer could testify with any certainty as to this fact and we do not have the benefit of his knowledge in regard to this point."

Dyer did so testify. The transcript reflects that on cross-examination, defendant had Dyer draw a sketch on the blackboard in the courtroom, which sketch contained, *inter alia,* the store, his house, his son's house, the road, *and the car.* In view of that testimony elicited by defendant on this cross-examination of Dyer, we are at a loss

to comprehend how defendant was so sorely prejudiced as he claims. Any error in the admission of Exhibit No. 19 would be harmless unless defendant can demonstrate prejudice, and he has not done so. *Jones v. State*, (1975) 165 Ind.App. 695, 333 N.E.2d 823. No reversible error exists under this argument.

*ISSUE IV*

■ Defendant contends that the court erred in admitting evidence obtained as a result of his warrantless and allegedly illegal arrest. He contends that the arrest was consummated when defendant got into the officer's car, the arrest was made without probable cause, and, therefore, any search, statement, or evidence taken thereafter was inadmissible even though a formal arrest was accomplished after the identification. By his own admission, defendant acknowledges that his trial counsel failed to object to the propriety of the arrest at trial. Defendant urges that we should consider the question of the legality of the arrest on its merits, despite the failure of his trial counsel to preserve the issue for review, under the fundamental error doctrine. That doctrine permits the reviewing court to consider a question which would otherwise have been waived when the error would deny the defendant "fundamental due process." Specifically, defendant alleges that the following evidence should have been excluded as fruits of the allegedly illegal arrest: statements attributed to the defendant following his accepting the offer of a ride from Officer Riney, testimony regarding the confrontation at the store, and a package of Kool cigarettes.

■ We do not agree that the admission of this evidence deprived defendant of fundamental due process. That the error complained of relates to the violation of a right guaranteed by the Constitution does not, in and of itself, render it fundamental error. *Malo v. State*, (1977) 266 Ind. 157, 361 N.E.2d 1201. As a reviewing court we are reluctant to invoke the rule of fundamental error; we do so only when a blatant error has occurred which would otherwise deny a defendant fundamental due process.

*Phillips v. State*, (1978) Ind., 376 N.E.2d 1143. In *Fair v. State*, (1977) 266 Ind. 380, 364 N.E.2d 1007, our Supreme Court held that the issue of the legality of the defendant's arrest was waived when not raised at trial and was not fundamental error, even when evidence obtained as a result of the allegedly illegal arrest was received at the trial. Defendant attempted at trial to exclude most of this evidence by other tactics, based on the alleged suggestiveness of the confrontation. We cannot say that the trial court should have *sua sponte* excluded the evidence on the basis of the allegedly illegal arrest when no objection thereto was made. The trial court was the proper forum in which to argue this matter. Since that issue was not raised there, it cannot be raised here.

■ Defendant *assumes* in his argument that the arrest was consummated when the defendant got into the officer's car. He cites no authority. An arrest has been defined in Indiana as the "taking of a person into custody . . . ." Ind.Code 35–1–17–1 (Supp.1979). "An arrest is made by an actual restraint of the person of the defendant, or by his submission to the custody of the officer . . . ." Ind.Code 35–1–19–1. The unmanifested intention of a police officer to place an individual under arrest is not sufficient to perfect the arrest. *State v. Hummel*, (1977) Ind.App., 363 N.E.2d 227.

> "An arrest is the taking, seizing, or detaining the person of another either by touching, or by any act which indicates an intention to take him into custody and subject the person arrested to the actual control and will of the person making the arrest, or any deprivation of the liberty of one person by another or any detention of him, for however short a time, without his consent, and against his will, whether it was by actual violence, threats, or otherwise." (Footnotes omitted.)

6A C.J.S. Arrest § 2 (1975).

> "[A] temporary detention may be akin to an arrest since, during the time of detention, the person detained may be considered to be in custody if he is physically

deprived of his freedom of acting in any significant way." (Footnote omitted.) 6A C.J.S. *Arrest* § 3.

■ Under any interpretation of the above authorities it cannot be said that when the officer offered defendant a ride and the defendant willingly accepted it, the officer *manifested* an intent to deprive defendant of his freedom of action in any significant way. The arrest took place only after the identification of defendant by the victim. The search and discovery of the challenged Kool cigarettes came after the arrest. The identification came before the arrest. The record clearly demonstrates that the officer in his initial encounter with the defendant, though he had a general description of the burglar and he suspected defendant as being the person involved, did not feel that he had probable cause for an arrest. He, therefore, intelligently played out the game until he did have probable cause, and then made the arrest.

Even if the defendant had not waived this question at the trial, which he did by his failure to object, his contention is without merit.

*ISSUE V*

■ Here defendant assigns as error the trial court's failure to admonish the jury to disregard any testimony relating to statements made by the defendant after the initial meeting with Officer Riney on the road. Ellis Dyer and his son both testified prior to the testimony given by Officer Riney. They testified without objection as to certain statements made by defendant when he arrived back at the store. Later, when Officer Riney testified, defendant objected to the officer testifying as to anything that defendant said after their initial encounter, urging that defendant had not at that time been apprised of his *Miranda* rights. The court conducted a hearing out of the presence of the jury and ultimately sustained the objection. The defendant did not make a motion to have the court admonish the jury to disregard the testimony of the Dyers relative to the statement made by defendant in the store, nor did the court make such an admonition *sua sponte*. The

defendant now claims reversible error because of the failure of the court to make such admonition. Defendant has waived any error in this regard by his failure to object or make a motion for the desired admonition. *Carter v. State*, (1977) 266 Ind. 196, 361 N.E.2d 1208, *cert. denied*, 434 U.S. 866, 54 L.Ed.2d 142.

*ISSUE VI*

Defendant claims he was denied a fair trial because of the alleged incompetence of his trial attorney. In particular, defendant contends that the following acts or omissions of his trial counsel constituted incompetent representation: (1) failure to utilize pretrial discovery methods; (2) failure to object to the legality of defendant's arrest; (3) failure to insure that the trial court properly admonished the jury regarding certain testimony; (4) failure to bring to the jury's attention a discrepancy in Dyer's testimony; (5) conducting cross-examination of witnesses in such a way as to effectively prove elements of the State's case; (6) failure to move for judgment on the evidence at the close of the State's case; and (7) failure to bring certain mitigating circumstances to the attention of the trial court at sentencing.

The Indiana Supreme Court has recently affirmed, in *Hollon v. State*, (1980) Ind., 398 N.E.2d 1273, 1277, the proposition that:

> "Isolated poor strategy, bad tactics, a mistake, carelessness, or inexperience does not necessarily amount to ineffective counsel unless, taken as a whole, the trial was a mockery of justice."

■ There is a presumption that an attorney has discharged his duty fully, and strong and convincing proof is required to be shown in order to overcome this presumption. *Hollon, supra; Isaac v. State*, (1971) 257 Ind. 319, 274 N.E.2d 231. We will not second-guess counsel's trial tactics or strategy. *Loman v. State*, (1976) 265 Ind. 255, 354 N.E.2d 205. In applying this standard, the reviewing court looks to the totality of the circumstances at trial.

■ Having carefully reviewed the trial record, we cannot say that the trial counsel's defense was so poorly conducted as to render the trial a mockery of justice. Counsel competently represented his client. It is one of the characteristics of human experience that hindsight often reveals alternative courses of conduct that may have produced different results if only they had been employed. Hindsight, however, is not the vantage point from which we judge allegations of incompetence. *Thomas v. State,* (1969) 251 Ind. 546, 242 N.E.2d 919. It may be that had defendant's counsel on appeal conducted the defense at trial, he would have done things differently. Whether or not he would have fared better before the jury is a matter of conjecture. Where experienced attorneys might disagree on the best tactics, deliberate decisions made for strategic reasons may not establish ineffective counsel. *Crocker v. State,* (1978) Ind.App., 378 N.E.2d 645. The alleged trial errors are not sufficient to defeat the presumption that the trial attorney discharged his duty. The record shows that he made motions to suppress and was partly successful in excluding evidence. He made objections at trial. There is no error here.

*ISSUE VII*

[20] Finally, defendant contends that there was insufficient evidence presented at trial to establish all material elements of the offense of burglary. In particular, defendant argues that the State failed to prove identity, breaking and entering, and the ownership of the store. When reviewing sufficiency of the evidence, this court will neither weigh the evidence nor determine the credibility of the witnesses. If there is substantial evidence of probative value sufficient to establish every material element of a crime beyond a reasonable doubt, the verdict will not be disturbed on appeal. *Luckett v. State,* (1972) 259 Ind. 174, 284 N.E.2d 738. The offense of which defendant was convicted is burglary. Ind. Code 35–43–2–1 (Supp.1979) states:

"A person who breaks and enters the building or structure of another person, with intent to commit a felony in it, commits burglary, a Class C felony. However, the offense is a Class B felony if it is committed while armed with a deadly weapon or if the building or structure is a dwelling, and a Class A felony if it results in either bodily injury or serious bodily injury to any other person."

The material elements of the offense are: (1) breaking and entering, (2) the building or structure of another person (3) with intent to commit a felony therein.

■ The elements of burglary may be proved by both direct and circumstantial evidence. *Luckett, supra; Wojcik v. State,* (1965) 246 Ind. 257, 204 N.E.2d 866.

■ Defendant challenges the sufficiency of the evidence on three grounds; we shall consider these individually.

First, defendant claims that the State failed to present evidence that the person encountered by Dyer outside the store was the defendant. His argument is unavailing. Dyer testified that the defendant was the person returned to the store by Officer Riney. We also testified that the person brought to the store was the person he had encountered earlier outside of the store. Thus, the defendant was identified sufficiently as the person Dyer encountered outside the store.

Next, defendant contends that the State failed to adduce sufficient evidence that the defendant was the individual who did break and enter the store. There was testimony that the alarm sounded in Dyer's home, indicating the store's door had been opened; Dyer encountered defendant 15 feet from the door within five minutes of the alarm; the door of the store was open; the defendant dropped several watches taken from the store; marks on the door indicated that it had been pried open. There was ample evidence presented to support the trier of fact's finding that defendant did break and enter into the store with a felonious intent.

■ Lastly, defendant contends that the State failed to present proof supportive of the material element that the structure was owned by another person. Although de-

fendant concedes that under the former burglary statute, a showing of a superior possessory interest was sufficient, he advances a novel argument that under the current burglary statute, the State must prove that ownership of the structure is vested in one other than the defendant. Defendant points out that the current burglary statute contains the language "of another person" relating to the building or structure involved, whereas the former statute contained no language so modifying the premises involved. He contends that the addition of the new language imposes upon the State the additional burden of proving title to the structure in a person other than the defendant. We are not convinced that we should adopt this interpretation. Dyer testified that he and his son operate the store. That is sufficient to establish that particular element of the statute.

For the above stated reasons this cause is affirmed.

Affirmed.

ROBERTSON, P. J., and RATLIFF, J., concur.