**James Edward ALLEN, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 181 S 21.

Supreme Court of Indiana.

Feb. 23, 1982.

William A. Kowalski, East Chicago, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

Defendant (Appellant) after trial by jury was found guilty of Murder, Ind.Code § 35–42–1–1 (Burns 1979), and of being an Habitual Offender, Ind.Code § 35–42–1–1 (Burns 1979) and was sentenced to a total of ninety (90) years imprisonment. This direct appeal presents the following issues:

(1) Whether the trial court erred in admitting Defendant's confession into evidence.

(2) Whether the trial court erred in allowing a witness to make an in-court identification of Defendant.

(3) Whether the trial court erred in admitting evidence of Defendant's flight from the police.

The evidence most favorable to the State reveals that on November 9, 1979 Defendant and a woman entered a drug store in Gary ostensibly to obtain a remedy for a pain in the woman's leg. After entering, both drew guns, and Defendant shot and killed the owner. Defendant took money, and both fled.

\* \* \* \* \* \*

### ISSUE I

Defendant presents six claims with respect to the alleged error in the admission of his confession.

#### A.

Defendant contends that the State did not prove that he knowingly and understandingly waived his *Miranda* rights.

"The burden is on the State to prove beyond a reasonable doubt that the waiver and the statement were voluntary, and in reviewing the trial court's ruling in these matters we do not weigh the evidence but simply determine whether there is sufficient evidence to support the finding." *Williams v. State*, (1981) Ind., 423 N.E.2d 598, 599.

■ The evidence upon this matter conflicts. Defendant points to his mental and physical debilitation, his lack of food and sleep, the absence of an attorney, and the duration of his detention, all of which occurred at the time just prior to his interrogation. The interrogating officer testified that he read *Miranda* advisements to Defendant from a card. Defendant also signed a waiver form, which appears in the record. The officer asked whether or not Defendant understood his rights after Defendant had read the form, and Defendant said that he understood. At the request of the officer, Defendant then initialed the waiver alongside each separate right advisement and signed it. From the evidence the trial court could find that Defendant knowingly and voluntarily waived his *Miranda* rights. *Wade v. State*, (1979) Ind., 387 N.E.2d 1309, 1311; *Niehaus v. State*, (1977) 265 Ind. 655, 658, 359 N.E.2d 513, 514–15, *cert. denied*, (1977) 434 U.S. 902, 98 S.Ct. 297, 54 L.Ed.2d 188; *Smith v. State*, (1976) 264 Ind. 587, 595–96, 348 N.E.2d 635, 639–40.

#### B.

■ Defendant contends that the trial court erred in admitting his confession because it did not make detailed findings of fact pursuant to Ind.Code § 35–5–5–2 (Burns 1979) which provides:

"The trial judge in determining the issue of voluntariness shall take into consideration all the circumstances surrounding the giving of the confession, including but not limited to (1) the time elapsing between the arrest and arraignment of the defendant making the confession, if it was made after arrest and before arraignment, (2) whether such defendant knew the nature of the offense with which he was charged or of which he was suspected at the time of making the confession, (3) whether or not such defendant was advised or knew that he was not required to make any statement and that such statement could be used against

him, (4) whether or not such defendant had been advised prior to questioning of his right to the assistance of counsel when questioned and when giving such confession. The presence or absence of any of the above mentioned factors to be taken into consideration by the judge need not be conclusive on the issue of voluntariness of the confession." (Repealed effective September 1, 1982).

This claim of error was not assigned by Defendant's Motion to Correct Errors, and therefore, is not available for review. *Guardiola v. State*, (1978) 268 Ind. 404, 405, 375 N.E.2d 1105, 1107.

■ Defendant argues that the trial court did not comment upon the statutorily enumerated factors, and that it would be a perversion of the statute to allow a trial court to remain silent about these factors. In *Apple v. State*, (1973) 158 Ind.App. 663, 671, 304 N.E.2d 321, 325–26, the Court referring to the predecessor of Ind.Code § 35–5–5–2, which contains the same language, stated the following:

"Apple next argues that the court erred in failing to make a detailed finding of record on each of the elements to be considered in determining the voluntariness of the confession, including also the element of delay in obtaining the confession after arrest. No authority is cited in support of this contention, nor is such action mandated by the statutes to be followed in determining voluntariness and admissibility."

We believe that this is a correct assessment of the law. Defendant does not tell us how he would have benefitted from detailed findings, which no doubt would have supported the trial court's ruling, in light of our standard of review.

### C.

■ Defendant next contends that the evidence fails to show beyond a reasonable doubt that his confession was not the product of his illegal detention. Again, this claim of error was not assigned by the Motion to Correct Errors and, therefore, is

not available for review. *Guardiola v. State, supra.*

■ Defendant argues that his confession was inadmissible because it was given more than six (6) hours after his arrest and prior to his having been taken before a magistrate. Ind.Code § 35–5–5–3 (Burns 1979). Under the statute, however, delay is just one of many factors to be considered in determining the admissibility of the confession. *Gutierrez v. State*, (1979) Ind., 388 N.E.2d 520, 525.

### D. & E.

■ Defendant contends that the evidence is insufficient to sustain a finding of voluntariness, because it shows that he was mentally and physically debilitated from drug withdrawal, that he suffered pain from a severe toe infection, that he lacked food and sleep, and that he was induced to confess upon promises of food and medical attention when he returned from Illinois to Indiana, which return would occur after completion of the statement.

Defendant's testimony upon these matters contradicts the testimony of the Illinois authorities, who arrested and held Defendant, and that of the Indiana authorities, who questioned Defendant. Defendant also presented evidence with respect to his physical condition at the Lake County Jail at the time just after his confession and extradition. This evidence tends to corroborate Defendant's testimony; however, the trial court, as trier of fact, chose to credit the testimony of the police officers as it was entitled to do, and we cannot rejudge the credibility of these witnesses. The trial court ruled as follows:

"BY THE COURT: Mr. Holcomb, the fact that the defendant may have been a drug addict does not mean he can't give a voluntary statement. I don't question whether your client was addicted to drugs, but the issue before the court is what happened at the time he gave that statement, and the evidence is that he appeared to be normal, no signs of withdrawal was observed by either of the policemen. What the impression of the

defendant may have been is not controlling either. It's what the officers said and did at that time. I find nothing improper in taking of the statement, and I don't think there is any need for you to submit a brief to the court. I'm going to deny your motion to suppress."

### F.

◼ Lastly Defendant argues that he was denied his right to counsel during the interrogation. He apparently asks us to infer this denial from police testimony that, had Defendant requested an attorney, they would have been unable to obtain one for him. We will make no such inference. Rather, we assume that, had a request for counsel been made, interrogation would have been terminated or suspended until counsel was available.

The remainder of Defendant's argument under this subheading treats whether or not his waiver of the right to counsel was voluntary. He cites *Hatcher v. State*, (1981) Ind., 414 N.E.2d 561, 565:

> "It is clear from the record that Defendant did not waive his right to counsel. Although, Officer Gillespie orally informed him that he was entitled to have an attorney present, he made no response. Gillespie did not ask whether he wanted to have an attorney present, whether he had an attorney, or whether he wished to contact an attorney. The State emphasizes that Defendant did not ask to have counsel present. However, as we noted above, 'where the assistance of counsel is a constitutional requisite, the right to be furnished counsel does not depend on a request.' (citations omitted). Likewise, a knowing, voluntary and intelligent waiver may not be inferred from a silent record. (citations omitted). Therefore, we hold that the defendant did not waive his Sixth Amendment right to have an attorney present at the 'line-up' proceedings."

As related above, the record of Defendant's waiver of his rights, which included the right to speak to an attorney, is not silent.

We have reviewed the record and we find that the trial court faced conflicting evidence. Our standard of review requires us to resolve the conflicts in favor of the trial court's ruling. While the delay involved in obtaining the confession is one factor which must be weighed negatively, the remainder of the record shows that the trial court could properly have found that Defendant confessed knowingly and voluntarily and without having been subjected to threats, promises or other improper influences. *Grey v. State*, (1980) Ind., 404 N.E.2d 1348, 1351-52; *Gutierrez v. State*, (1979) Ind., 388 N.E.2d 520, 525-26; *Franklin v. State*, (1977) 266 Ind. 540, 546, 364 N.E.2d 1019, 1022.

### ISSUE II

◼ Prior to trial, Defendant made a motion to prevent the in-court identification of Defendant by a witness, Cornelia Mailath. At a prior hearing it had been shown that Miss Mailath was unable to identify Defendant, whose picture was contained in a photographic array that the witness viewed. The trial court ruled that the motion was premature and informed defense counsel that he could object and would be heard at the proper time, if an attempt at identification were made. Thereafter, just prior to Miss Mailath's testimony, counsel renewed his motion:

> "BY LOU HOLCOMB (defense counsel): For the record, I want to renew my motion, regarding any evidence of in-court identification of the Defendant by this witness.
> "BY JOHN BURKE (counsel for the State): I think it's premature.
> "BY THE COURT: If you come to the point where that's going to be a question put to her, and if you believe her answer will be different than it was before, I want to know.
> "BY JOHN BURKE: I wasn't here at the hearing.
> "BY THE COURT: She wasn't able to identify him. I'm talking at the time. So, I'm not going to rule on this."

Miss Mailath, who is a part owner of the drug store, and who was present at the time, related the events of the Robbery. She did not actually see Defendant shoot her brother, the victim; however, she heard the sound of a gun shot from the area in the store where her brother and Defendant were located. She then identified Defendant as the perpetrator, whereupon Defendant moved for a mistrial:

"BY LOU HOLCOMB: At this point, there is no way that this Court—He is the only person that has been sitting here, from the time we picked a Jury to this time. There is no way in the world she can state her association with being here, the last two days. She was unable to make an identification before. But here, to come into court today and say she can identify him. She knows him; she knows who I am. And she saw him Monday and today. There is no way in the world that her identification is not tendered by the fact that she had seen him in other identity. He is the only one sitting with me. There were five people with me, that would be a different story. She stated that she could not identify him shortly after the crime with Officer Slay being present. Lighting conditions were so good, she should have been able to identify him then.

"BY THE COURT: Well, certainly, a mis-trial is not the proper remedy. This would go to the weight. If at one time she indicated under oath that she could not identify him, you have a right to impeach her. I don't think that means she cannot make an identification here today. That would go to the weight of it. Are you contending there is an impermissible photographic line-up?

"BY LOU HOLCOMB: I'm saying it's impermissible identification of my client today in court, due to the fact of prior identification."

Defendant argues as follows:

"Defendant contends that the viewing of Defendant by witness Mailath while Defendant was seated at the Counsel table during the pretrial Voir Dire impanelling of the jury constitutes a pretrial taint or an impermissibly suggestive identification procedure. There is little difference whether the one-on-one occurs at the police station or in a Courtroom.

"The question may be raised as to whether the Defendant by his failure to request a protective order in this regard waived the objection. Defendant submits he did not. If the burden is on the state to avoid improper out of court confrontations between witness and suspect is not the same burden applicable to pretrial in-court confrontations? Where the State proposes to use an identifying witness the State should take proper precautions to avoid any unnecessarily suggestive pretrial confrontations. Just as the State must avoid pretrial taints of any of its evidence so too must the State avoid in-Court pretrial unnecessarily suggestive one-on-one confrontations between witness and accused."

The State responds as follows:

"Moreover, the record does not reflect any objection by Defendant during the voir dire proceedings. The State asserts that Defendant should not be allowed to now object to a proceeding he permitted. Had Defendant objected to having the witness present, rather than sitting idly by and allowing the alleged error to occur, the court might have taken measures to prevent the proceeding now claimed as error."

We agree with the State. Nothing in the record shows that the State brought Miss Mailath into Court for the purposes of making any identification or attempted identification. *See Nelson v. State*, (1980) Ind., 401 N.E.2d 666, 669 (witness spontaneously identifies Defendant at a chance encounter); *Cook v. State*, (1980) Ind.App., 403 N.E.2d 860, 864 (same). If we were to adopt Defendant's position, the trial court would have to exclude any in-court identification where the witness identified anyone he or she may have seen seated at defense table while making his or her way to the

witness stand. Miss Mailath's inability to identify Defendant on a previous occasion reflected on the weight of her in-court identification; not its admissibility. *Grimes v. State*, (1980) Ind., 412 N.E.2d 75, 76; *Young v. State*, (1980), Ind., 409 N.E.2d 579, 582.

■ Defendant also argues the following:

"If it is thus conceded that Defendant must sit at the Counsel table in a suggestive manner, and if it is further conceded that a line-up is the best safeguard of proper identification and that it should be conducted where Defendant is in custody, *Zion v. State, supra,* is it not fundamentally unfair to allow a witness who could not identify Defendant prior to trial to identify the Defendant in Court some seven and one-half months later as he is seated at the Counsel table without the State having first conducted a line-up procedure?"

\* \* \* \* \* \*

"Any argument that defendant may have waived any objection to the absence of a pretrial line-up by not requesting one is untenable. First, defendant has no right to request the line-up and secondly, the burden is upon the State to show the admissibility of its evidence."

Defendant cites *Wooten v. State*, (1981) Ind.App., 418 N.E.2d 538 (trans. denied) for the proposition that a Defendant may not compel a pretrial line-up. There the court stated:

" \* \* \* nor have we found authority for the proposition that a defendant is entitled to an in-court lineup of his own choosing." Id. 418 N.E.2d at 544.

*Wooten* does not treat a timely motion for a *pretrial* line-up, and we have found no authority which prohibited Defendant from making such a motion. The record further shows that this asserted error was not presented to the trial court at trial when Miss Mailath testified, and does not appear in the Motion to Correct Errors. Therefore, it is not available for review. *Guardiola v. State, supra.*

## ISSUE III

■ The Murder/Robbery charged in this case occurred November 9, 1979. Over objection, Officer Candiano of the Gary Police related an incident, which occurred at about 1:00 a. m. on February 18, 1980. Candiano observed a vehicle parked next to a liquor store. The vehicle did not bear a proper registration plate. As the officer approached the vehicle, it moved onto the road, and he stopped it. The driver, a woman, walked back to the squad car. Candiano requested her license and registration.

The driver returned to the vehicle and drove off. Candiano pursued the vehicle during which time he saw what appeared to be two gunshots fired at his squad car. The pursuit continued and more shots were fired, as the cars entered the Interstate highway. The chase exceeded ninety (90) miles per hour until the driver lost control of her vehicle in Illinois, and it came to a stop. She jumped out of the car and was apprehended. She had identified herself as Sandra Evans, but her true identity was Lillian Davis, and she was alleged, at trial, to be the woman who had assisted Defendant in the pharmacy robbery.

Defendant also jumped from the car and ran but got but approximately twenty-five feet away when he was apprehended. He identified himself as James Link. The police recovered two guns from the Davis automobile and found three persons sitting in the backseat. All of the people were taken to the Calumet City jail where later that day the confession, which we discussed above, was made.

Defendant contends that the trial court erred in admitting this evidence of flight from the police because there had been no foundation, which connected Defendant, who was only a passenger in the fleeing vehicle.

The exact ground for Defendant's in-trial objection to the officer's testimony is difficult to discern from the record:

"BY LOU HOLCOMB: I believe Officer Candiano is going to testify regarding the circumstances of how he got to be

apprehended. I think the testimony that he will testify to will show: One, the driver of the car did the chase and one was disregarded stop sign and drove in a reckless manner. My client was not driving. There is no evidence to show that. As far as the gun shots that were fired out of the car, the Officer will not testify he saw my client with a gun in his hand or anything at that point.

\*     \*     \*     \*     \*     \*

"BY THE COURT: You have objection as to the area that we are going into?

"BY LOU HOLCOMB: The area we are going into, yes.

"BY THE COURT: I think it's a permissible area to go into, and I'm going to overrule the objection. You can proceed. If you have any more objections, you may make them at that time. Certainly, this is relevant."

During the direct examination of Officer Candiano that followed the objection and ruling and revealed the aforedescribed chase and capture, Defendant made three specific objections, each of which was properly overruled. None of these rulings has been here assigned as error. With reference to the very general objection set forth above, it does appear that counsel and the trial judge had some meeting of the minds; and we accept the objection and ruling as an assignable issue of whether or not the flight was admissible notwithstanding that it was remote in time to the crime charged and that the Defendant neither drove the vehicle nor fired the shots.

For the proposition that the flight and shots were not chargeable to him, Defendant cites no authority. Although the circumstances certainly do not compel the conclusion that Defendant was in control of the episode, a permissible inference is that he was acting in consort with the others. This inference is strengthened by his attempt to flee, after the vehicle came to a stop, and to conceal his identity.

■ We also reject Defendant's claim that such attempted escape was too

remote, in point of time, to support an inference of consciousness of guilt, as to the crime charged. Trial courts have wide discretion regarding the exclusion of evidence for remoteness. *Austin v. State*, (1974) 262 Ind. 529, 319 N.E.2d 130. That substantial time had passed goes to the weight of the evidence but does not render it inadmissible. *Garr v. State*, (1967) 248 Ind. 295, 227 N.E.2d 171; *Grey v. State*, (1980) Ind., 404 N.E.2d 1348, 1353.

■ The evidence complained of did reveal other criminal activity without a substantial showing that it was relevant to the crime charged and thus had a potential to prejudice the jury, but this in and of itself did not render it inadmissible. *Woodard v. State*, (1977) 267 Ind. 19, 366 N.E.2d 1160; *Clark v. State*, (1976) 265 Ind. 161, 352 N.E.2d 762. *Also, see* Wigmore on Evidence (Third Edition) §§ 13, 215, 216.

Some jurisdictions have been rather restrictive in permitting the introduction of "flight" evidence and have required a nexus between the crime charged and the flight of much greater substance than is present in this case. However, we have been among those permitting considerable leeway. *Rogers v. State*, (1974) 262 Ind. 315, 315 N.E.2d 707; *Finger v. State*, (1973) 260 Ind. 524, 297 N.E.2d 819; *Robinson v. State*, (1971) 257 Ind. 38, 271 N.E.2d 727; *Reno v. State*, (1967) 248 Ind. 334, 228 N.E.2d 14; *State v. Torphy*, (1940) 217 Ind. 383, 28 N.E.2d 70.

We find no reversible error. The judgment of the trial court is affirmed.

GIVAN, C. J., and HUNTER and PIVARNIK, JJ., concur.

DeBRULER, J., concurs in result.